## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

GREGORY PARRY,

        Plaintiff,                 Case No. 2:22-cv-11328-DPH-DRG

v.

                                    Hon.  Denise Page Hood

HOSPICE OF MICHIGAN, INC., *a Michigan non-profit corporation*,

        Defendant.

---

Sarah S. Prescott (P70510)
SALVATORE PRESCOTT
PORTER & PORTER, PLLC
*Attorneys for Plaintiff*
105 East Main Street
Northville, MI 48167
(248) 679-8711
prescott@sppplaw.com

David R. Deromedi (P42093)
Angelina Rose Delmastro (P81712)
DICKINSON WRIGHT PLLC
*Attorneys for Defendant*
500 Woodward Ave., Suite 4000
Detroit, MI 48226
(313) 223-3048
dderomedi@dickinsonwright.com
adelmastro@dickinsonwright.com

Kenneth M. Mogill (P17865)
MOGILL, POSNER & COHEN
*Attorneys for Plaintiff*
27 E. Flint St., 2nd Floor
Lake Orion, MI 48362
(248) 814-9470
kmogill@bignet.net

---

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO PARTIALLY DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Gregory Parry, by and through his attorneys, SALVATORE, PRESCOTT PORTER & PORTER PLLC, respectfully asks this Honorable Court to deny Defendants' Motion to Partially Dismiss Plaintiff's First Amended Complaint. Gregory Parry properly pled federal claims upon which relief may be granted, and the individual defendants are not exempt from individual liability. Plaintiff further relies on the facts and authority in his supporting memorandum, which accompanies this response.

Respectfully submitted,
SALVATORE PRESCOTT
PORTER & PORTER, PLLC

/s/ Sarah S. Prescott

Sarah S. Prescott (P70510)
*Attorneys for Plaintiff*
105 E. Main St.
Northville, MI 48167
(248) 679-8711
prescott@sppplaw.com

and

MOGILL, POSNER & COHEN

/s/ Kenneth M. Mogill

Kenneth M. Mogill (P17865)
*Attorneys for Plaintiff*
27 E. Flint St., 2nd Floor
Lake Orion, MI 48362
(248) 814-9470
kmogill@bignet.net

Dated: August 31, 2022

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

GREGORY PARRY,

          Plaintiff,                    Case No. 2:22-cv-11328-DPH-DRG

v.

                                         Hon.  Denise Page Hood

HOSPICE OF MICHIGAN, INC., *a Michigan non-profit corporation*,

          Defendant.

---

| | |
|---|---|
| Sarah S. Prescott (P70510) | David R. Deromedi (P42093) |
| SALVATORE PRESCOTT | Angelina Rose Delmastro (P81712) |
| PORTER & PORTER, PLLC | DICKINSON WRIGHT PLLC |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |
| 105 East Main Street | 500 Woodward Ave., Suite 4000 |
| Northville, MI 48167 | Detroit, MI 48226 |
| (248) 679-8711 | (313) 223-3048 |
| prescott@sppplaw.com | dderomedi@dickinsonwright.com |
| | adelmastro@dickinsonwright.com |

Kenneth M. Mogill (P17865)
MOGILL, POSNER & COHEN
*Attorneys for Plaintiff*
27 E. Flint St., 2nd Floor
Lake Orion, MI 48362
(248) 814-9470
kmogill@bignet.net

---

## PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE TO DEFENDANTS' MOTION TO PARTIALLY DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ....................................................................... iii

STATEMENT OF ISSUES PRESENTED............................................... vii

MOST CONTROLLING OR APPROPRIATE AUTHORITY ........................... viii

   I.   Plaintiff States an Appropriate Claim under 31 U.S.C. § 3730(h)...................1

     A.  The Liberal Pleading Standards Under Federal Rule of Civil Procedure 8 Control Here .............................................................................................2

     B.  The Amended Complaint Satisfies Rule 8, Defendants are on Notice of the Nature of the Dispute ............................................................................4

     C.  Defendants' Limited Unpublished Legal Citations Do Not Justify Dismissal; Defendants Are on Notice of the Nature of this Dispute .................6

     D.  Defendants Can Develop Nuances in Discovery ........................................9

   II.  Individual Defendants Should Not be Dismissed as to Count 1 .....................9

   III.    Public Policy Tort Claim is an Alternative to False Claims Act Claim, and Must Not be Dismissed at this Point....................................................15

   IV.    Individual Defendants are Liable for Public Policy Torts ..........................18

   V.  Individual Liability under MCL § 400.610c Is Consistent with State Law ...21

   VI.    Amendment ...............................................................................22

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Elec. Data Sys. Corp.,* 870 F. Supp. 749 (E.D. Mich. 1994) .............21

*Allen v. Morris Building Company,* 360 Mich. 214, 103 N.W.2d 491 (1960)........*22*

*Anzaldua v. Neogen Corp*,
    292 Mich. App. 626 (2011) ...........................................................................17

*Ashcroft v. Iqbal,* 556 U.S. 662 (2009) ........................................................................3

*Attorney General v. Ankersen,* 148 Mich. App. 524 (1986)....................................23

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007)..................................................3

*Berg v. Tittabawassee Twp.,*
    No. 355404, 2021 WL 6064357 (Mich. Ct. App. Dec. 21, 2021)...........16, 19

*Bostock v. Clayton Cnty., Georgia,*
    140 S. Ct. 1731, 207 L. Ed. 2d 218 (2020)....................................................13

*Bush v. Hayes,* 286 Mich. 546, 282 N.W. 239 (1938)..............................................22

*Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) ........................9

*Cranford v. Wayne County Sheriff,* 2001 WL 637408 (Mich. App. 2001) .............17

*Curtis v. Alcoa, Inc.,* 2009 WL 838232 [E.D. Tenn. 2009]......................................24

*Deneau v. Manor Care, Inc.,* 219 F.Supp.2d 855 (E.D. Mich. 2002) .....................17

*Donovan v. FirstCredit, Inc.,* 983 F.3d 246 (6th Cir. 2020)....................................13

*Driver v. Hanley (After Remand)*, 226 Mich.App 558 (1997)..................................17

*Dudewicz v. Norris Schmid, Inc.*, 443 Mich. 68 (1993) ..........................................17

*Foman v. Davis*, 371 U.S. 178, 182 (1962) ..............................................................25

*Hall v. Consumers Energy Co.*, 2006 WL 1479911 (Mich. App. 2006) ................ 17

*HDC, LLC v. City of Ann Arbor*, 675 F.3d 608 (6th Cir. 2012) ............................... 3

*Hemppling v. Burr*, 59 Mich. 294, 26 N.W. 496 (1886) ........................................ 22

*Hendricks v. Bronson Methodist Hosp., Inc.*,
    No. 1:13-CV-294, 2014 WL 3752917 (W.D. Mich. July 30, 2014) ............ 16

*In re Columbia/HCA Health Care Corporation Billing Practices Litigation*,
    293 F.3d 289 (6th Cir. 2002) .......................................................... 25

*In re Grand Jury Investigation* No. 83–2–35, 723 F.2d 447 (6th Cir.1983) .......... 24

*Jenkins v. Cent. Transp., Inc.*,
    No. 09CV525, 2010 WL 420027 (N.D. Ohio Jan. 29, 2010) ................ 19-20

*Joy Management Co. v. Detroit,* 183 Mich. App. 334 (1990) ................................ 23

*Keys v. Humana, Inc.*, 684 F.3d 605, (6th Cir. 2012) ................................................ 3

*Kimmelman v. Heather Downs Mgmt. Ltd.*,
    278 Mich. App. 569 (2008) .......................................................... 18

*Laborde v. Rivera–Dueno*, 719 F.Supp.2d 198 (D.P.R.2010) ................................ 11

*McKenzie v. BellSouth Telecommunications, Inc.*,
    219 F.3d 508 (6th Cir. 2000) .......................................................... 5

*Mikhaeil v. Walgreens Inc.*,
    No. 13-14107, 2015 WL 778179 (E.D. Mich. Feb. 24, 2015) ..................... 17

*Pace v Edel-Harrelson*, 499 Mich. 1, 878 N.W.2d 784 (2016) ..................................

*Royal Surplus Lines, Inc v. Sofamor Danek Group*,
    190 F.R.D. 463 (W.D. Tenn. 1999) ................................................. 17

*Son v. Coal Equity, Inc.,* 122 F. App'x. 797 (6th Cir. 2004) .................................. 15

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002) .................................................. 9

*Tibor v. Michigan Orthopaedic Inst.*,
   72 F. Supp. 3d 750 (E.D. Mich. 2014) ..................................................... 10-11

*Townsend v. Bayer Corp.*, 774 F.3d 446 (8th Cir. 2014) .......................................14

*Trombetta v. Detroit, Toledo & Ironton R. Co.*,
   81 Mich. App. 489, 265 N.W.2d 385 (1978) ................................................19

*United States ex rel. Crockett v. Complete Fitness Rehab., Inc.*,
   721 F. App'x 451 (6th Cir. 2018) .........................................................2, 6, 18

*United States ex rel. Moore v. Community Health Servs., Inc.*,
   2012 WL 1069474 (D.Conn. Mar.29, 2012) .................................................11

*U.S., ex rel., Rigsby v. State Farm Fire & Cas. Co.*,
   794 F.3d 457 (5th Cir. 2015) ...........................................................................14

*U.S. ex rel. Wilkins v. State of Ohio*, 145 F.3d 1333 (6th Cir. 1998) .......................9

*U.S. v. Flores*, 477 F.3d 431 (6th Cir. 2007) .............................................................6

*United States v. Ron Pair Enterprises, Inc.*,
   489 U.S. 235 (1989)........................................................................................13

*United States v. Skeddle*, 989 F. Supp. 890 (N.D. Ohio 1997)...............................24

*United States v. Wal-Mart Stores E., LP*,
   858 F. App'x 876 (6th Cir. 2021) .....................................................................6

*United States v. Zolin*, 491 U.S. 554 (1989) ..........................................................24

*Warren Tool Co. v. Stephenson,* 11 Mich. App. 274 (1968) ...................................22

*Weihua Huang v. Rector & Visitors of Univ. of Virginia*,
   896 F.Supp.2d 524 (W.D.Va.2012)..................................................................11

*Weisbarth v. Geauga Park Dist.*, 499 F.3d 538 (6th Cir. 2007)................................3

*Whitman v. City of Burton*, 493 Mich. 303 (2013) .................................................14

*Wines v. Crosby & Co*., 169 Mich. 210 (1912) ......................................................22

*Zaino v. North Woodward Construction Company,* 355 Mich. 425 (1959)............22

**Statutes**

Fed. R. Civ. P. 8 ........................................................................................2, 3, 8, 9

Fed. R. Civ. P. 12(b)(6)...............................................................................3, 6, 11

MCL 400.601 et seq.......................................................................................1

MCL 400.610c .......................................................................................... 21-22

U.S. False Claims Act, 31 U.S.C. 3730(h) .......................................................*passim*

**Other Authorities**

155 Cong. Rec. E1295-03, E1300, 2009 WL 1544226 (daily ed. June 3, 2009) ....15

1986 U.S.C.C.A.N. 5266, 5299 ................................................................5

S.Rep. No. 99-345, at 34 (1986) ............................................................4

S. Rep. 110-507, 2008 WL 4415147 .....................................................14

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.  Should the Court partially dismiss Plaintiff's First Amended Complaint because it fails to state facts sufficient to plausibly plead a claim upon which relief can be granted?

    Plaintiff:     No.

## **MOST CONTROLLING OR APPROPRIATE AUTHORITY**

Fed. R. Civ. P. 8

Fed. R. Civ. P. 12(b)(6)

This is a matter alleging a wrongful termination of the Plaintiff, Mr. Gregory Parry.  The Defendants are the Hospice of Michigan and three of its officers, who were added in an amended complaint filed on July 20, 2022, Docket No. 4.

Mr. Parry worked for the Defendants for years, rendered consistently excellent performance, and was repeatedly promoted for his efforts. Am. Compl. Paras. 9-10. He had recently been promoted and favorably evaluated, when, without a lawful reason or cause of any sort, Defendants terminated him. *Id.* Paras. 11, 12, 18. Parry alleges that he had engaged in protected activities, including opposing violations of the U.S. and Michigan False Claims Act and preparing for immediate disclosure to the government prior to the termination, and he alleges that the Defendants knew it, and fired him because of it. *Id.* Para. 13, 14, 17, 18, 30, 31. The complaint states the termination was in violation of an anti-retaliation provision in the U.S. False Claims Act, 31 U.S.C. § 3730(h), a similar anti-retaliation provision in MCL § 400.601 et seq., the Medicaid False Claim Act, and likewise constitutes a common law tort in Michigan, namely termination in violation of public policy.

## I.    Plaintiff States an Appropriate Claim under 31 U.S.C. § 3730(h)

In Part IV.A.(1) of the Defendants' motion to dismiss, Defendants properly recite the elements of the employment claim at issue in this matter that arises under the False Claims Act. There are four elements. Defendants do not deny that two of the four are properly pled, those being the elements that they took adverse action

1

against the Plaintiff by firing him, and that they did so because of and causally related to his protected conduct. Rather, the motion argues the complaint inadequately describes the protected conduct at issue, and whether the Defendants knew of it. *Id.*

### A. The Liberal Pleading Standards Under Federal Rule of Civil Procedure 8 Control Here

This is not a matter arising under Federal Rule of Civil Procedure 9, which in many False Claims Act (hereafter "FCA") cases requires pleading with particularity. Rule 9, where it applies, requires detailed pleadings, such as naming the parties to the fraud, the representations made, the time, place, and context that rendered the statement dishonest, fraudulent intent, and such related details. Rule 9 only applies when a plaintiff seeks to allege fraud, which often is the case under the False Claims Act, but is not at issue here. For example, Defendants cite *United States ex rel. Crockett v. Complete Fitness Rehab., Inc.*, 721 F. App'x 451 (6th Cir. 2018), which in another portion of the case recognizes that, "unlike a FCA violation claim, a FCA retaliation claim 'does not require a showing of fraud and therefore need not meet the heightened pleading requirements of Rule 9(b).'" *Id.* at 460. This motion instead turns on Federal Rule of Civil Procedure 8, which Defendants do not recite.

Rule 8(a) explicitly dictates that a plaintiff must make a "short and plain" statement of his case showing the basis for relief. Bare recitation of legal elements does not suffice; however, that is not at issue here. Moreover, Rule 8(d) underscores

that each "allegation must be simple, concise, and direct." **The Supreme Court has therefore reiterated that** "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Sixth Circuit has reversed lower courts for overly crabbed reading of notice pleadings, stating "it would be 'inaccurate to read [*Twombly* and *Iqbal*] so narrowly as to be the death of notice pleading and we recognize the continuing viability of the '**short and plain**' language of Federal Rule of Civil Procedure 8.'" *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) (quoting *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012)) (emphasis added).

The purpose of Rule 12(b)(6) is to sort colorable claims from random grievances untethered to law or claims infected with legal error such as a time-bar. A plaintiff therefore must only allege the "material elements necessary to sustain a recovery under some viable legal theory," and this can be done with either "direct or inferential allegations." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541–42 (6th Cir. 2007). That is, the Court is required to draw any necessary reasonable inferences in the non-movant's favor. *See also Twombly,* 550 U.S. at 570 (explaining that a plaintiff need not allege "specific facts" beyond those necessary to state a "viable claim and the grounds showing entitlement to relief"); *Keys*, 684 F.3d at 608

(reviewing the court's obligation to draw "reasonable inference" from a challenged complaint).

### B. The Amended Complaint Satisfies Rule 8, Defendants Are on Notice of the Nature of the Dispute

Here, Plaintiff meets the requirements of notice pleading. Defendants do not even assert that Plaintiff has failed to address either of the two necessary elements criticized in the motion: the existence of protected activity and knowledge of that activity. It is indisputable that the Complaint alleges both, directly. Am. Compl. Para. 13, 14, 17, 19.  Rather, Defendants argue the *amount of detail* alleged about these elements is insufficient and Defendants (conclusorily) argue the pleadings are conclusory. The goal of application of the Federal Rules of Civil Procedure, per Rule 1, is to cut through technicalities and get cases heard on the merits. What the Rules fundamentally require and what this complaint does is to ensure defendants are on notice of why they are being sued. From the face of the Amended Complaint, it could not be more plain:  Defendants are being sued for terminating the Plaintiff. The Complaint gives the what, when, and who: Parry was the Assistant Vice President of Hospice of Michigan, Arbor Hospice, and NorthStar Palliative Care, and Vice President of Supportive Care Services of Michigan, Inc. d/b/a NorthStar Solutions Group. He was fired on or about July 20, 2021. Defendant Myers carried out the termination; Defendant Miller was present and acquiesced; Defendant Cahill's approved. Am. Compl. Para. 14.

The complaint also puts the Defendants on notice of the grounds for relief, that is why this termination was wrongful, by citing 31 U.S.C. § 3730(h), which makes it unlawful to terminate an employee for protected conduct. The FCA protects anything "in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h) (emphasis added). The legislative history, as cited by the Sixth Circuit, states that "protected activity should …be interpreted broadly." S.Rep. No. 99–345, at 35 (1986), *reprinted in* 1986 U.S.C.C.A.N. at 5300.  For example, internal reporting of fraud on the government suffices. *McKenzie v. BellSouth Telecommunications, Inc.*, 219 F.3d 508, 516 (6th Cir. 2000).

The complaint does not simply recite this law, and it does not simply say the Plaintiff did something protected. It puts Defendants on notice of the four categories of protected activities Plaintiff will develop in discovery and he alleges Defendants witnessed firsthand:

> (a) opposing longstanding, serious, unlawful activities by Defendants,
>
> (b) appropriately gathering information and preparing for the disclosure of Defendants' unlawful activities as required by statute and/or regulation,
>
> (c) refusing to participate in Defendants' unlawful activities, and
>
> (d) refusing to participate in a cover-up of Defendants' unlawful activities.

Am. Compl. Para. 13. The Complaint then goes on to detail plausibly why these activities (rather than merit) caused Plaintiff's termination. It puts the Defendants on notice of Plaintiff's claim that there had been no "forewarning" of any cause to terminate and alleges there was no "lawful basis" to do so. *Id.* Para. 12. In fact, at all times, the Plaintiff maintained "excellent performance;" this garnered "multiple" promotions, including one shortly before termination. *Id.* Para. 10. The complaint adds, "Defendants terminated Plaintiff's employment despite the fact that Plaintiff performed his job satisfactorily or better, including as reflected in an unbroken string of surveys and evaluation—including an evaluation carried out just days before terminating Plaintiff's employment." *Id.* Para. 18. Finally, the Complaint makes clear that Defendant's officer, Ms. Myers, on July 20, 2021 "directly linked the decision to terminate" Plaintiff to his protected conduct, "including but not limited to falsely claiming that Plaintiff's attitude had suddenly become 'hostile' while also implicitly admitting Defendants' unlawful course of conduct." *Id.* Para. 14. This is sufficient identification of the issues for the defense to frame discovery and defend the matter. It therefore satisfies the letter and spirit of Rule 8.

### C. Defendants' Limited Unpublished Legal Citations Do Not Justify Dismissal; Defendants Are on Notice of the Nature of this Dispute

Defendants cite only two cases, both unpublished, in support of their argument. As an initial matter, even if they were on point, these unpublished cases would not be precedential in this court. *E.g., U.S. v. Flores*, 477 F.3d 431, 433–34

(6th Cir. 2007).  In any event, neither case is on point or useful here. Both involve False Claims Act fraud cases involving Rule 9(b). The plaintiffs in both cases attempted to meet Rule 9(b) by laying out all the details they could muster. In *Crockett*, the court held the plaintiff succeeded, and the False Claims Act employment retaliation complaint was sufficient, denying a 12(b)(6) motion on that claim. The case certainly does not establish any grounds for dismissal or purport to set up a litmus test or yardstick for other cases to rule differently.

In the second case Defendants cite, *United States v. Wal-Mart Stores E., LP*, 858 F. App'x 876 (6th Cir. 2021), the plaintiff repeatedly amended the complaint to attempt to meet the Rule 9 fraud standard, yet notably even after doing so entirely "failed to plead that Walmart knew he was pursuing an FCA action." *Id.* at 880. Here, by contrast, the Amended Complaint alleges that the Defendants are well aware of these facts already. Specifically, it alleges that Defendants acted "knowing[ly] and direct[ly]" as a "direct result of" Plaintiff having opposed violations of the FCA. Am. Compl. Paras. 14, 19-20. It alleges that the Defendants' conduct was indeed "unlawful" under the Act and that "Defendants were aware that Plaintiff knew" what was afoot, and Plaintiff also "knew of their efforts to conceal that unlawful conduct." *Id.* Para. 19. These allegations, which are to be accepted as true, reflect direct knowledge and involvement of the Defendants--well before any pleadings were filed.

It is also important to recall, as cited above, that a plaintiff's allegations can suffice based on direct **or** on inferential allegations. Here, going to the issue of whether the Defendants are on sufficient notice of what this case is about, Plaintiff has further alleged that he "refused to participate or acquiesce…condone and join in Defendants' plans." *Id.* Para. 19. Instead, he was "preparing for the disclosure of Defendants' unlawful activities as required by statute and/or regulation" and "refusing to participate in a cover-up…." *Id.* Para. 19. The inference patent on the face of these claims (and true as a matter of fact) is that these Defendants were well aware what was wrong no later than July 2021, that they had invited the Plaintiff to join their misconduct, but that he refused. In fact, Paragraph 14, alleges that Myers cited "Plaintiff's unwillingness to participate or acquiesce in Defendants' unlawful conduct" at the time of termination including by stating he was being "hostile" to Defendants instead of working cooperatively (to further criminal behavior and fraud).

People do not cover up what they are unaware of. Put another way, the Defendants knew what they were doing wrong on July 20, 2021, and they have never been confused or lacking in notice. They suddenly and without grounds or notice fired a man they had multiply promoted and recently positively evaluated, and they know why. The Court at this stage accepts these allegations as true and they amply provide Defendants with sufficient information to defend here.

### D.  Defendants Can Develop Nuances in Discovery

Plaintiff does not dispute that his complaint is "short" "plain" "simple" "concise" and "direct." However, those are the **requirements** of Rule 8, not a basis to dismiss. Importantly, our entire system of Rules interconnects with Rule 8 to afford Defendants ample opportunity to develop the facts:

> The simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims….Other provisions of the Federal Rules of Civil Procedure are inextricably linked to Rule 8(a)'s simplified notice pleading standard…If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding. Moreover, claims lacking merit may be dealt with through summary judgment under Rule 56. The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim. The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512-14 (2002) (internal citations, quotations omitted); *Conley v. Gibson*, 355 U.S. 41, 47-48 (1957) (observing that "notice pleading" is appropriate where the Rules otherwise afford "the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues."). For these reasons, Count 1 is sufficiently pled.

### II.   Individual Defendants Should Not be Dismissed as to Count 1

At Mot. p. 9-10, ECF No. 6 Pg. ID. 42-43, the individual Defendants next move for dismissal from the FCA Retaliation Count (Count 1) on the ground that, because they are individuals, they cannot be sued under the FCA. Such was indeed the holding of numerous cases before an amendment to the Act, which occurred in 2009. Hence, Defendants cite *U.S. ex rel. Wilkins v. State of Ohio*, 145 F.3d 1333, at *3 (6th Cir. 1998), a pre-amendment case. (Also, oddly a case in which the court allowed a supervisor to be sued individually, where the 11th Amendment barred suit against the state employer, contrary to the Defendants' present arguments). In any event, in 1998 when *Wilkins* was written, it is undisputed the Act expressly limited the scope of § 3730(h) to "employers." *See* 31 U.S.C. § 3730(h) (2003) ("Any employee who is discharged ... **by his or her employer** ... shall be entitled to all relief necessary....").

However, Congress was displeased with this limitation and reacted to such cases in 2009 by expanding protection, to open the class of possible retaliators as follows:

**(h) Relief from retaliatory actions.--**

**(1) In general.**--Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

10

This Court is required to read all the law as written, without adding or ignoring provisions. From its face, it is clear this provision does not limit liability to entities or exclude managers.

Since the 2009 Amendment, a split of authority has developed on the meaning of the Amendment, however--a split which the Defendants conveniently omit to inform the Court about.

Here in the Sixth Circuit, there is no controlling decision on point going to individual liability for retaliation claims under the FCA. However, courts across the country have denied Rule 12(b)(6) motions and declined to dismiss individual defendants such as officers, directors, and supervisors rejecting the arguments made in this matter. These cases reason that removing the words "employer" in 2009 is consistent with individual liability under § 3730(h). *See United States ex rel. Moore v. Community Health Servs., Inc.*, 2012 WL 1069474  (D.Conn. Mar.29, 2012); *Weihua Huang v. Rector & Visitors of Univ. of Virginia*, 896 F.Supp.2d 524, 548 n. 16 (W.D.Va.2012) (noting that by eliminating the reference to "employers" as defendants, Congress "left the universe of defendants undefined and wide-open"); *Laborde.v. Rivera–Dueno*, 719 F.Supp.2d 198, 205 (D.P.R.2010) (denying Rule 12(b)(6) motion to dismiss individual defendants).

Some of the cases defendants have cited occupy the other end of the split, often on the theory that one potential remedy § 3730(h) offers is reinstatement, a

remedy that a non-employer could not give. However, courts do not look at ability to fulfill a potential remedy at a 12(b) stage, in order to exempt otherwise proper parties from suit in other instances. If they did, and this logic controlled, then any business targeted with a § 3730(h) retaliation suit could defend by claiming inability to pay damages or reinstate—then claim they are exempt from liability because Congress only intended for entities with the ability to afford damages or to reinstate to be liable under § 3730(h).

Ultimately here, the text of the statute controls. On its face, it in no way limits cases to a particular subset of defendant parties. A notable contrast can be made to Title VII, another anti-retaliation provision, which not only commands explicitly that "employers" shall not retaliate, but also specifically and narrowly defines the class of what constitutes an "employer" in a way that excludes human supervisors. 42 U.S. Code § 2000e. Here, by contrast, the individual Defendants are asking to be exempted from liability based on no such limit--and *despite* clear indication that Congress knows how to limit the field of potential defendants in anti-retaliation statutes where it wishes to do so, as with Title VII. It is undisputed that Plaintiff was within the possible class of plaintiff parties as an employee.  That is all the statute requires.

The cases Defendants cite ignore the fundamental duty of this Court—as dictated by binding law—that it must read a statute as written, without inserting and

imposing unwritten conditions. "The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 242 (1989) (internal citation, punctuation omitted, citing cases). "Only when following the literal language of the statute would lead to 'an interpretation which is inconsistent with the legislative intent or to an absurd result' can a court modify the meaning of the statutory language." *Donovan v. FirstCredit, Inc.*, 983 F.3d 246, 254 (6th Cir. 2020) (quoting and citing cases). "[T]he words on the page constitute the law adopted by Congress and approved by the President. If judges could add to, remodel, update, or detract from old statutory terms inspired only by extratextual sources and our own imaginations, we would risk amending statutes outside the legislative process reserved for the people's representatives." *Bostock v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1738 (2020).

The sort of erroneous result Defendants propose here slipped into the courts of Michigan in a related context involving the Michigan's Whistleblower Protection Act in the mid-2000's. Specifically, courts began holding that in order to state a claim for retaliation the plaintiff would need to show her or his "primary motivation" was an altruistic one, i.e., to benefit the public. However, that was just not part of the Act. Years later and after many erroneous decisions ended meritorious cases, the

Supreme Court took up the question and promptly shot down that line of cases. It reasoned: "Because there is no statutory basis for imposing a motivation requirement, we will not judicially impose one. To do so would violate the fundamental rule of statutory construction that precludes judicial construction or interpretation where, as here, the statute is clear and unambiguous." *Whitman v. City of Burton*, 493 Mich. 303, 313 (2013). In short, the absence of a condition on the face of a statute *is* a clear and unambiguous sign *not* to import one judicially. Clearly, such precedent is not binding on this Court—it is not exactly on point here—but it is an illustration of how motivated defendants sometimes convince courts to impose extra-statutory provisos, conditions, and qualifications to whistleblower statutes to avoid liability—wrongly so. This Court should not fall into such error.

Even if this Court found the absence of a narrowing class of defendants somehow ambiguous, the individual defendants should not prevail. This Court must be guided in assessing ambiguity by its duty to vindicate legislative intent. The FCA is a remedial statute designed to thwart fraud against the government and retaliation against those who seek to oppose it. *E.g., U.S., ex rel., Rigsby v. State Farm Fire & Cas. Co.*, 794 F.3d 457, 468 (5th Cir. 2015) (citing *Townsend v. Bayer Corp.*, 774 F.3d 446, 459 (8th Cir. 2014)). No one doubts that the 2009 Amendment was the result of what Congress "considered to be an unduly restrictive readings by the courts of Section 3730(h)'s term[,] employee." *See* S. REP. 110-507, 2008 WL 4415147,

at *6, 26 ("**The need for a robust FCA cannot be understated**....While this provision was designed to protect employees from employer retaliation, over the past 20 years courts have limited this protection through various decisions narrowly interpreting the definition of 'employee' and thus leaving contractors and subcontractors open to retaliation.") (emphasis added); *see also* 155 Cong. Rec. E1295-03, 2009 WL 1544226, at *E1297, E1300 ("Since its inception, **the central purpose** of the False Claims Act has been to enlist private citizens in combating fraud against the U.S. Treasury...."). The broad, remedial purpose of the Act means it should be read to reach any possible defendant not inconsistent with the plain language of the statute.

### III.     The Public Policy Tort Claim is an Alternative to False Claims Act Claim, and Must Not be Dismissed at this Point

At Mot. p. 10-13 (Pg. ID 43-45) Defendants next seek dismissal of Count 2 of the Amended Complaint on the grounds of pre-emption.

If Parry succeeds on the FCA retaliation claim, he cannot also recover on the public policy claim. However, the claims are properly pled in the alternative. *See* Fed. R. Civ. Proc. 8(e)(2), (3); *Son v. Coal Equity, Inc.*, 122 F. App'x. 797, 802 (6th Cir. 2004). A jury could find the FCA applies here, because of the nature of Plaintiff's protected conduct. But if it found that the FCA did ***not*** protect the Plaintiff—for example, because Plaintiff opposed illegal conduct (sufficient to sustain the public policy claim) but without a sufficient nexus to the FCA for that

Act to offer protection, then there could be no preemption. The same result would apply if the Court were ultimately to dismiss the FCA retaliation claim summarily upon finding the protected conduct did not amount to protected conduct under the FCA.

Here, factual development is appropriate, and disputes about whether what Parry did was protected under the FCA prevent this Court from dismissing his public policy tort claim. This is true because only a viable statutory claim preempts or precludes recovery under a common law public policy tort claim. A statute cannot preclude an action if it simply does not apply.

Judge Jonker faced a similar challenge in *Hendricks v. Bronson Methodist Hosp., Inc.*, No. 1:13-CV-294, 2014 WL 3752917, at *7 (W.D. Mich. July 30, 2014) and denied the defendant's motion to dismiss. As applied in the related context of Michigan's whistleblower anti-retaliation law, the Whistleblowers' Protection Act (WPA): "If . . . the WPA does not apply and provides no remedy, neither then can it be plaintiff's exclusive remedy." *Hall v. Consumers Energy Co.*, 2006 WL 1479911, *2 (Mich. App. 2006). *See also Deneau v. Manor Care, Inc.*, 219 F.Supp.2d 855, 869 (E.D. Mich. 2002) ("[A] sine qua non of any preclusion by the WPA would be the applicability of the express remedy of the WPA.") (citing cases); *Driver v. Hanley (After Remand)*, 226 Mich.App 558, 566 (1997); *Dudewicz v. Norris Schmid, Inc.*, 443 Mich. 68, 80 (1993) (only a viable statutory claim preempts a public policy

claim); *Cranford v. Wayne County Sheriff*, 2001 WL 637408, *4 (Mich. App. 2001) (same); *See Pace v Edel-Harrelson*, 499 Mich. 1, 10 & n 19 (2016), quoting *Anzaldua v. Neogen Corp*, 292 Mich. App. 626, 631 (2011) ("if the WPA does not apply, it provides no remedy and there is no preemption."). Notably, Defendants cite WPA case law in their brief, reflecting the persuasive nature of this similar case law.

Further proceedings will determine if the FCA retaliation claim is colorable, and only at that point would election of remedies be appropriate. For example, Defendants rely heavily on *Mikhaeil v. Walgreens Inc.*, No. 13-14107, 2015 WL 778179, at *12 (E.D. Mich. Feb. 24, 2015) in their motion. In that matter, the procedural posture was different, and that is pivotal. Judge Edmunds had decided the FCA retaliation case *would* go to a jury, and on a full evidentiary record at summary judgment she further assessed that the state law tort public policy claim was based on the same facts. That has not happened here. Defendants also cite *United States ex rel. Crockett v. Complete Fitness Rehab.*, Inc., 721 F. App'x 451, 462 (6th Cir. 2018), where, again, the Court found the FCA had been "applicable" (i.e., colorable) and therefore preempted the state law claims. Again, here precisely that question, the application of the FCA, is disputed by the Defendants including in this very motion.

*Kimmelman v. Heather Downs Mgmt. Ltd.*, 278 Mich. App. 569, 573 (2008), is the final case Defendants rely on, and it is a state law, WPA, case. There, the WPA

claim was time-barred, and the plaintiff had not pled any claim under it, but was attempting to escape the time-bar by pivoting to a public policy tort claim. It was not disputed, unlike here, that the statutory (WPA) claim in that instance had been valid and colorable. Here, there is a dispute about the FCA claim, including as seen in this very motion. Defendants are simultaneously arguing the FCA ***does not apply at all***, due to lack of appropriate protected conduct—and they will do so again at summary judgment, not doubt—yet at the same time they also claim that ***it does apply*** and even preempts. *Kimmelman* just was procedurally and factually different, as it did not address such a scenario. Moreover, later cases, which do involve such disputes as we have here over the application of an anti-retaliation statute have contemplated *Kimmelman*, and they cite it as far as it goes, but then they add "however, if the [anti-retaliation statute] does not apply, it provides no remedy and there is no preemption." *Berg v. Tittabawassee Twp.*, No. 355404, 2021 WL 6064357, at *3 (Mich. Ct. App. Dec. 21, 2021).

Just as Judge Jonker held in the FCA case cited above, this matter requires further development to be resolved. This motion must therefore be denied.

## IV. Individual Defendants are Liable for Public Policy Torts

Defendants next argue that the individual Defendants cannot as a matter of law be liable under Michigan common law for wrongful termination in violation of public policy. They cite no cases, and say the matter has not been resolved.

However, it has been resolved, long since. In *Trombetta v. Detroit, Toledo & Ironton R. Co.*, 81 Mich. App. 489, 496 (1978), the plaintiff sued the railroad company that employed him and his supervisor who fired him, alleging wrongful termination in violation of public policy.  The Defendants moved for summary resolution, and the Court held that the plaintiff had stated a proper claim against these defendants (it later granted summary judgment on different grounds). It specifically wrote, "This Court has recognized exceptions to the well established rule that at will employment contracts are terminable at any time for any reason by either party. These exceptions were created to prevent **individuals** from contravening the public policy of this state." *Trombetta v. Detroit, Toledo & Ironton R. Co.*, 81 Mich. App. 489, 495 (1978) (emphasis added, footnoted omitted); *cf. Jenkins v. Cent. Transp., Inc.*, No. 09CV525, 2010 WL 420027, at *4 (N.D. Ohio Jan. 29, 2010) (reviewing well established case law in Ohio to the same effect).

Next the individual Defendants argue that there are insufficient pleadings to involve them here, in any case.  How can they tell what is really being alleged here? It is not complicated. They are implicated in the termination of the Plaintiff. The pleadings reviewed above allege that each of the Defendants knowingly attempted to involve Parry in illegal conduct, to cover up that conduct, that they urged him to participate, and that they knew he opposed their conduct and refused to do so. The Amended Complaint states that these "Defendants unlawfully terminated Plaintiff's

employment because" of this.  Am. Compl. Para. 13.  Parry alleges that Myers had the "the required approval of Defendant Cahill," to do so and terminated Parry with "apparent acquiescence of co-executive-team-member Defendant Miller" present. *Id.* Para. 14.  Further, this "retaliation against Plaintiff was motivated by Plaintiff's refusal to violate the law or acquiesce in violations of law and for his vocal opposition to Defendants' unlawful policies and practices." *Id.* Para. 24.

It seems that the individual Defendants' true position here is that Parry did not name each of them one-by-one in iterative paragraph pleadings. However, when he refers to the Defendants, Parry means the Defendants. The use of the pronoun Defendants is no different than if he used their names: "[**Myers, Cahill, and Miller**] unlawfully terminated Plaintiff's employment because" of his protected opposition, (Para. 13), or "[**Myers, Cahill, and Miller**] terminated Plaintiff's employment without any forewarning or any lawful basis" (Para. 12), or ""[**Myers, Cahill and Miller's**] retaliation against Plaintiff was motivated by Plaintiff's refusal to violate the law or acquiesce in violations of law and for his vocal opposition to [**their**] unlawful policies and practices" (Para. 24).

These Defendants are not confused as to the nature of their involvement here. They are on notice that Parry claims they decided to fire him, they did it on July 20, 2021, Myers delivered the news, Cahill was a necessary ratifier and ratified the decision, and the cause was refusing to participate with and cover up False Claims

as identified in the False Claims Act. Again, the pleadings may be "simple" and "concise," but that is explicitly what Rule 8 requires.

The reference by Defendants to *Alexander v. Elec. Data Sys. Corp.*, 870 F. Supp. 749, 753 (E.D. Mich. 1994), at Mot. p. 15 (Pg. ID 48), is simply inapt. There, upon full development of the facts, the court determined it was factually undisputed that two individuals named in a disability discrimination suit took no part in the failure to hire the plaintiff. That is, the plaintiff himself did not even claim either had been involved in the decision he challenged, and both witnesses had sworn affidavits saying they had nothing to do with the matter. In fact, it appeared they had been fraudulently joined to the case simply to thwart diversity jurisdiction. That is simply not at issue here: these Defendants will be swearing no such thing. They fired the Plaintiff.

## V.   Individual Liability under MCL § 400.610c is Consistent with State Law

The Individual Defendants next argue that they should not be liable for terminating Plaintiff under MCL § 400.610c. The law is properly recited in Defendants' brief. Defendants are also correct that there is no apparent precedent on the question of individual liability under this statute.

The language of the Michigan Act is similar to that of the *former, un-amended* Federal FCA, which was generally held to exclude individual liability by focusing on "employer" liability. As argued above, that has now been removed in the Federal

statute to open the class of defendants who can be held liable.  No such amendment has followed in Michigan, however. This could counsel for dismissing the individuals as to Count 3 of the complaint, while honoring the federal change in law and denying their motion for dismissal as to Count 1.

However, it should be noted that Michigan law has long held that an agent may be held liable for those torts in which the agent participated:

> It is a familiar principle that the agents and officers of a corporation are liable for torts which they personally commit, even though in doing so they act for the corporation, and even though the corporation is also liable for the tort. *Zaino v. North Woodward Construction Company* [355 Mich. 425, 429, 95 N.W.2d 33 (1959)] (fraudulent representations); *Allen v. Morris Building Company* [360 Mich. 214, 218, 103 N.W.2d 491 (1960)] (willful change in natural flowage of water); *Wines v. Crosby & Co.* [169 Mich. 210, 214, 135 N.W. 96 (1912)] (active promotion and sale of a compound known to be dangerous); *Bush v. Hayes* [286 Mich. 546, 549, 282 N.W. 239 (1938)] (conversion); *Hemppling v. Burr* [59 Mich. 294, 295, 26 N.W. 496 (1886)] (fraud). [*Id.*]

*Warren Tool Co. v. Stephenson*, 11 Mich. App. 274, 300 (1968); *Attorney General v. Ankersen,* 148 Mich. App. 524, 557 (1986) ("It is beyond question that a corporate employee or official is personally liable for all tortious or criminal acts in which he participates, regardless of whether he was acting on his own behalf or on behalf of the corporation."); *Joy Management Co. v. Detroit*, 183 Mich. App. 334, 340 (1990). This was and is the basis for naming these Defendants in Count 3, and Plaintiff submits that they can and should be liable.

## VI.    Amendment

Plaintiff is happy to delve in an amended pleading into every detail already well known to Defendants regarding the questions it raises at Mot. p. 8, Pg ID. 41 -- what were Parry's exact activities just before his termination, precisely how did he oppose violation of the FCA, or what exact facts did he gather, etc. Plaintiff takes the position that the appropriate vehicle for requesting a more definite statement is a motion for the same, i.e., under Federal Rule of Civil Procedure 12(e), and that has not been filed here. However, to the extent this Court treats or considers this motion as one for a more definite statement, Plaintiff takes the position that any such defense request to do so should be viewed as a waiver of any residual or arguable claim of privilege.

Plaintiff is a licensed attorney. At times relevant to this dispute, he was called upon to give business advice to Defendant HOM. Plaintiff did not at any time have an attorney-client relationship with any of the individual Defendants (who by virtue of their wrongdoing and role in guiding HOM into unlawful conduct remain to this day in blatant conflict with Defendant HOM), and Defendant HOM retained other counsel specifically to provide it legal advice on all matters at issue. Defendant HOM has never asserted privilege, and it has not behaved in a manner consistent with any assertion of privilege, but should it attempt to reverse course in the future, it is Plaintiff's position that no communications between Plaintiff and any agent of HOM are privileged for the reasons that (1) any advice he was asked about and/or

addressed was business advice and, therefore, not subject to the attorney-client privilege, see, *e.g.*, *Curtis v. Alcoa, Inc.*, 2009 WL 838232 (E.D. Tenn. 2009), or (2) the communication was not privileged because of the crime-fraud exception to the attorney-client privilege, or (3) the privilege has been waived. In any case, if Defendant HOM asserts privilege, it would then be appropriate for this Court to determine the validity of the assertion, utilizing the procedures established in *United States v. Zolin*, 491 U.S. 554 (1989), and its progeny.  *See, e.g.*, *Royal Surplus Lines, Inc v. Sofamor Danek Group*, 190 F.R.D. 463 (W.D. Tenn. 1999); *United States v. Skeddle*, 989 F. Supp. 890 (N.D. Ohio 1997); *Curtis v. Alcoa*, *supra*.  In making such a determination, the Court will be guided, *inter alia*, by the fact that "'[c]laims of attorney-client privilege are 'narrowly construed'".  *In re Columbia/HCA Health Care Corporation Billing Practices Litigation*, 293 F.3d 289, 294 (6th Cir. 2002).

For all the reasons set forth above, however, Plaintiff does not believe such an amendment is required, and will only delay proceedings here in violation of Federal Rule of Civil Procedure 1 and contrary to Rule 8. However, in the event this Court determines that a more detailed statement is required in an amended complaint, in order to ensure that all statements to be made in the amended complaint are not precluded by the attorney-client privilege, the Court should first engage in the privilege assessment suggested above.

Under no circumstance would dismissal with prejudice be the proper result here. Rather, the Court is guided by long-established law and Federal Rule of Civil Procedure 15(a):

> Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded. See generally, 3 Moore, Federal Practice (2d ed. 1948), 15.08, 15.10. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.' Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.

*Foman v. Davis*, 371 U.S. 178, 182 (1962).

Respectfully submitted,

SALVATORE PRESCOTT
PORTER & PORTER, PLLC

*/s/ Sarah S. Prescott*

Sarah S. Prescott (P70510)
*Attorneys for Plaintiff*
105 E. Main St.
Northville, MI 48167
(248) 679-8711
prescott@sppplaw.com

and

MOGILL, POSNER & COHEN

*/s/Kenneth M. Mogill*

Kenneth M. Mogill (P17865)
*Attorneys for Plaintiff*
27 E. Flint St., 2nd Floor
Lake Orion, MI 48362
(248) 814-9470
kmogill@bignet.net

Dated: August 31, 2022

26

## **CERTIFICATE OF SERVICE**

I certify that on August 31, 2022, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to all parties of record.

/s/ Sarah Prescott