UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY PARRY,

    Plaintiff

v.

                      HON. DENISE PAGE HOOD
                      CASE NO. 2:22-CV-11328

HOSPICE OF MICHIGAN, INC.,
a Michigan non-profit corporation,

    Defendant.
_____/

| Sarah S. Prescott (P70510) | David R. Deromedi (P42093) |
| --- | --- |
| SALVATORE PRESCOTT PORTER & PORTER, PLLC | Angelina R. Delmastro (P81712) |
| | DICKINSON WRIGHT PLLC |
| *Attorneys for Plaintiff* | *Attorneys for Defendant* |
| 105 East Main Street | 500 Woodward Ave. Suite 4000 |
| Northville, MI 48167 | Detroit, MI 48226 |
| (248) 679-8711 | (313) 223-3048 |
| prescott@sppplaw.com | dderomedi@dickinsonwright.com |
| | adelmastro@dickinsonwright.com |
| Kenneth M. Mogill (P17865 | |
| MOBILL, POSNER & COHEN | |
| *Attorneys for Plaintiff* | |
| 27 E. Flint St., 2nd Floor | |
| Lake Orion, MI 48362 | |
| (248) 814-9470 | |
| kmogill@bignet.net | |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO PARTIALLY DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

I. INTRODUCTION

Like nearly all of Plaintiff's claims, his Response is without merit. Preliminarily, Plaintiff criticizes Defendants for relying upon unpublished opinions (Pl. Resp. Br. at 6), yet Plaintiff himself relies on unpublished out-of-circuit case law. (*Id.* at 11.) Plaintiff cannot have it both ways. Similarly, Plaintiff cites legislative history (notwithstanding that it is a disfavored analysis) when it suits him (*id.* at 5, 10, 14–15), then directs the Court to focus solely on the statutory language (*id.* at 11–12), before finally resorting to a purposivist argument regarding the remedial nature of the FCA (*id.* at 15). Again, Plaintiff cannot have it both ways.

Plaintiff fails to plead FCA retaliation claims, fails to state a public policy wrongful discharge claim, and fails to state personal liability against the Individual Defendants. Defendants respectfully request that the Court grant their Motion in full.

II. ARGUMENT

A. **Plaintiff fails to plead an FCA retaliation claim.**

Plaintiff is correct that he is subject to Rule 8(a), and accurately cites *United States ex rel. Crockett v. Complete Fitness Rehab., Inc.*, 721 F. App'x 451, 452–53 (6th Cir. 2018), for that proposition. (Resp. at 2.) However, in *Crockett*, unlike here, the plaintiff ***did*** allege sufficient facts to state an FCA retaliation claim.[1]

---

[1] *Keys v. Humana, Inc.*, 684 F.3d 605, 610 (6th Cir. 2012), upon which Plaintiff relies, is similarly unhelpful for him. In *Keys*, the plaintiff's complaint "**detail[ed] several specific events**" for each type of employment action in which she alleged to have been treated differently than Caucasian counterparts. *Id.* Here, Plaintiff alleges only one arguably specific event – the alleged conversation with Myers, for which

1

In *Crockett*, the plaintiff alleged that Complete Rehab "had a policy of over-providing treatments to Medicare patients, and thereby receiving greater payments from Medicare than a more limited treatment scheme would have permitted." *Id.* at 454. Crockett further alleged that Complete Rehab "would code its Medicare Part A patients for ultra-high or very high levels of care, even if it was medically inappropriate to try and deliver the highest frequency of therapy to those patients, and also over-deliver therapy services to Medicare Part B patients." *Id.* Nothing of either sort can be found in Plaintiff's FAC. Plaintiff here alleges nothing so specific.

Importantly, Crockett went on to identify numerous specific emails – by both date and their contents – between her and her supervisor regarding the standard of care. *Id.* The court expressly held that "Crockett's numerous emails create the plausibility necessary to survive a motion to dismiss on this [FCA retaliation] theory." *Id.* at 460. Plaintiff's FAC, by comparison, is totally devoid of any such detail. "Crockett's complaints were also linked to the jargon used in Medicare billing, such as 'ultra high,' 'clinically appropriate RUG levels,' and 'national averages regarding RUG levels.'" *Id.* Crockett used specific language to identify specific examples of allegedly fraudulent or illegal activity. Plaintiff here does not.

---

he supplies no details or supporting facts. (FAC ¶ 14.) This is a far cry from factual content sufficient to nudge "possible" into "plausible." *Keys*, 684 F.3d at 610 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)). On the contrary, Plaintiff's vague language is a perfect example of a "'naked assertion[ ]' devoid of 'further factual enhancement'" prohibited by *Twombly* and *Iqbal*. *Id.*

2

*Crockett* supports dismissal of Plaintiff's FCA retaliation claims.

### B. Plaintiff's threadbare "factual" allegations are insufficient.[2]

In his Response, Plaintiff repeats his thin allegations of "unlawful activities" and "gathering information" (Resp. at 5–6), insisting that Defendants know full well what he is referring to, and, because of this, these threadbare allegations suffice. (*Id.* at 8.) Not so. Truly, Defendants do not have notice of the factual basis upon which Plaintiff brings his claims.

Defendants operate a large business and must daily comply with hundreds of federal and state laws and regulations. Given that Defendants are not in the habit of intentionally engaging in unlawful activities,[3] Defendants do not immediately know to what Plaintiff refers, and with a sizable business the possibilities of potential alleged violations are practically endless. Plaintiff could be referring to literally anything.

---

[2] *Twombly* abrogated Plaintiff's cited *Conley v. Gibson*, 335 U.S. 41, 45–46 (1957).
[3] Indeed, Defendants cannot even properly deny Plaintiff's allegations as pled beyond stating that they, as a general matter, do not engage in unlawful activities and, thus, presumably would deny Plaintiff's allegations of wrongdoing – whatever those may be. Relatedly, Defendants cannot meaningfully analyze or respond to Plaintiff's privilege argument (Resp. at 23–24). Without knowing what Plaintiff purportedly intends to disclose in connection with a potential amendment of his FAC, Defendants cannot determine whether or not they would claim privilege as to any such disclosure. Accordingly, Defendants expressly reserve the right to assert attorney-client privilege with respect to future potential disclosures by Plaintiff, and respectfully request the right to fully brief same in the event the Court permits Plaintiff to amend.

In terms of the Individual Defendants, Plaintiff's Response only furthers Defendants' argument. (*See* Resp. at 20.) Plaintiff argues that using the word "Defendants" has the same effect as writing out the name of every Defendant every time. (*Id.*) True. But that misses the point. Plaintiff does not allege any facts as to what acts each Individual Defendant they themselves took personally and individually that could lead to their ***personal*** liability as individuals. Lumping individual defendants in with a company is not enough to plausibly allege personal liability as individuals.

With respect to Plaintiff's public policy wrongful discharge claims, *Trombetta v. Detroit, Toledo & Ironton R. Co.*, 81 Mich. App. 489 (1978) (*see* Resp. at 19), does ***not*** establish individual supervisor liability for such claims. The court in *Trombetta* did not even analyze the issue of individual supervisor liability. Its ruling primarily turned on whether the plaintiff needed to exhaust administrative remedies under the Railway Labor Act in order to state a public policy wrongful discharge claim. Whether or to what extent the plaintiff could hold the individual supervisor defendant personally liable was never discussed.

### C.     There is No Individual Liability for FCA Retaliation.

Federal courts across the circuits have agreed – almost unanimously – that there is no individual liability for FCA retaliation claims. *See, e.g., Roberto v. Kent State Univ.*, No. 5:16CV1305, 2017 WL 1155563, at *3 (N.D. Ohio Mar. 28, 2017);

4

*Scott v. Bonnes*, 135 F. Supp. 3d 906, 920–21 (S.D. Iowa 2015) (collecting cases). Specifically, courts have repeatedly refused to find individual liability based on the 2009 Amendment statutory language's omission of the word "employer." *See, e.g.*, *U.S. ex rel. Karvelas v. Tufts Shared Servs., Inc.*, 433 F. Supp. 3d 174, 180–81 (D. Mass. 2019).[4] Not only have "the overwhelming majority of courts" rejected individual liability for FCA retaliation, "[a]nalysis confirms that this overwhelming chorus of opinions is correct." *Brach v. Conflict Kinetics Corp.*, 221 F. Supp. 3d 743, 748 (E.D. Va. 2016) (analyzing the 2009 Amendment statutory language and concluding that individual supervisor liability did not lie).

"[T]he 2009 amendment did not evidence Congress's intent to expand § 3730(h) beyond employers," nor did it "evidence Congress's intent to add individual liability for a violation of the retaliation provisions of the FCA." *Monsour v. N.Y. State Off. for People with Development Disabilities*, No. 1:13-CV-0336 (TJM) (CFH), 2014 WL 975604, at *11 (N.D.N.Y. Mar. 12, 2014).[5] Rather, "Congress'

---

[4] *See also Simmons v. Boys & Girls Club of the Pikes Peak Region*, No. 16–cv–01461–RBJ, 2017 WL 4337931, at *2 (D. Colo. Sept. 29, 2017); *Wichansky v. Zowine*, No. CV-13-01208-PHX-DGC, 2014 WL 289924, at *4 (D. Ariz. Jan. 24, 2014) (discussing other courts' decisions addressing the issue and concluding that "[t]he 2009 amendments were intended to broaden the scope of those protected from violations of the FCA, rather than those who may be held liable for such violations"); *U.S. ex rel. Black v. Am. Society for Eng'g Educ.*, No. 12–1139, 2014 WL 1765337, at *6 (E.D. Pa. May 2, 2014).

[5] *See also Howell v. Town of Ball*, No. CIV.A. 12-951, 2012 WL 3962387, at *3 (W.D. La. Sept. 4, 2012) (agreeing with "defendants' observation that an alteration in the terms and conditions of employment, whether by demotion, termination or

5

intention in amending § 3730(h) was to expand the number of plaintiffs, such as independent contractors and agents, who can bring an action under the FCA, but not to expand the number of defendants who can be held liable." *Scott*, 135 F. Supp. 3d at 920.

Against the backdrop of numerous courts rejecting individual liability in pre-2009 case law, "Congress could have used the words 'any person' to make its intent clear that the statute now imposed liability on individuals." *Russo v. Broncor, Inc.*, No. 13-CV-348-JPG-DGW, 2013 WL 7158040, at *6 (S.D. Ill. July 24, 2013) (citing *Aryai v. Forfeiture Support Associates, LLC*, 25 F. Supp. 3d 376, 386 (S.D.N.Y. 2012)). Congress did not. Moreover, "[t]he retention of the mandatory remedy of reinstatement further suggests Congress did not intend to add individual liability in the 2009 amendment." *Id.*

*U.S. ex rel. Moore v. Community Health Services., Inc.*, No. 3:09-cv-1127, 2012 WL 1069474, at *9 (D. Conn. Mar. 29, 2012), and *Huang v. University of Virginia*, 896 F. Supp. 2d 524 (W.D. Va. 2012),[6] upon which Plaintiff relies, have

---

otherwise, may only be carried out by plaintiff's employer, which further supports the view that FCA retaliation claims may only be brought against a plaintiff's employer"), *aff'd*, 827 F.3d 515, 530 (5th Cir. 2016) ("Before the passage of the 2009 amendments, federal courts uniformly held that the FCA created a cause of action against only a plaintiff's employer. Adopting Howell's argument means concluding that Congress overturned this precedent, not by the insertion of express language expanding liability, but only by mere implication.")

[6] Additionally, in *Huang*, the court twice declined to actually make a definitive ruling as to whether the FCA provides for individual liability. *Irving v. PAE Govt. Servs.,*

6

been roundly criticized and rejected. *See, e.g.*, *Elkharwily v. Mayo Holding Co.*, No. 12-cv-3062, 2013 WL 3338731, at *4 (D. Minn. Jul. 2, 2013) (acknowledging omission of "employer" in 2009 amendment, rejecting *Moore*, and concluding FCA retaliation claims cannot be maintained against individual defendants); *McKoy v. Uliss*, No. 17-cv-3398 (BMC), 2017 WL 2963456, at *3 (E.D.N.Y. July 11, 2017) (characterizing *Moore* and *Huang* as "outliers").

This Court should reject Plaintiff's sparse legal authority for the outliers they are, and join the overwhelming majority of courts concluding that there is no individual liability for FCA retaliation claims.

### III.  CONCLUSION

For the foregoing reasons, and as more fully set forth in their Brief in Support of their Motion, Defendants respectfully request that the Court grant their Motion in full.

Dated: September 14, 2022          Respectfully submitted,

DICKINSON WRIGHT PLLC
By: */s/ David R. Deromedi*
    David R. Deromedi (P42093)
    Angelina R. Delmastro (P81712)
    500 Woodward Avenue, Suite 4000
    Detroit MI 48226; (313) 223-3500
    dderomedi@dickinsonwright.com
    adelmastro@dickinsonwright.com
    *Attorneys for Defendants*

---

*Inc.*, 249 F. Supp. 3d 826, 834–35 (E.D. Va. 2017) (quoting *Huang*, 896 F. Supp. 2d at 548 n.16, and *Huang v. Rector & Visitors of Univ. of Va.*, 2013 WL 865845, at *4 (W.D. Va. Mar. 7., 2013)).

7

## CERTIFICATE OF SERVICE

I certify that on September 14, 2022, I electronically filed the foregoing *Reply Brief in Support of Defendants' Motion to Partially Dismiss Plaintiff's First Amended Complaint* with the Clerk of the Court using the ECF system, which will send notification of such filing to all parties of record.

*/s/ Colleen L. Maguire*
Legal Secretary
DICKINSON WRIGHT, PLLC
500 Woodward Avenue, Suite 4000
Detroit, Michigan  48226-3425
(313) 223-3500
cmaguire@dickinsonwright.com

4854-5710-6737 v5 [21612-42]

8