UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY PARRY,

        Plaintiff,

v.

HOSPICE OF MICHIGAN, INC., *a Michigan non-profit corporation*, et al.,

        Defendants.

Case No. 2:22-cv-11328-DPH-DRG

Hon. Denise Page Hood

Sarah S. Prescott (P70510)
Annemarie Smith-Morris (IL 6336786)
SALVATORE PRESCOTT
PORTER & PORTER, PLLC
*Attorneys for Plaintiff*
105 East Main Street
Northville, MI 48167
(248) 679-8711
prescott@sppplaw.com
smith-morris@sppplaw.com

Kenneth M. Mogill (P17865)
MOGILL, POSNER & COHEN
*Attorneys for Plaintiff*
27 E. Flint St., 2nd Floor
Lake Orion, MI 48362
(248) 814-9470
kmogill@bignet.net

David R. Deromedi (P42093)
Angelina Rose Delmastro (P81712)
DICKINSON WRIGHT PLLC
*Attorneys for Defendants*
500 Woodward Ave., Suite 4000
Detroit, MI 48226
(313) 223-3048
dderomedi@dickinsonwright.com
adelmastro@dickinsonwright.com

**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL DISCOVERY**

The discovery at issue has been outstanding for **5 months**, and Plaintiff attempted to secure production **without** taxing this Court. Defendants claim they have agreed to produce documents, but 5 months speaks for itself – and Plaintiff has exhausted all efforts to bring that to fruition, including sending a stipulation to produce, which Defendants have not signed despite multiple requests. Defendants also claim Parry's requests are irrelevant, yet they give reasons for terminating Parry's employment that support and underscore the relevance of his requests. Finally, Defendants claim sanctions are improper, despite established law that sanctions in these circumstances are the rule, not the exception. Thus, this Court should grant Plaintiff's Motion.

**1.      Plaintiff's Requests are relevant.**

Defendants' own response confirms just how relevant are Plaintiff's Requests for Production 4, 5, 7, 16, 17, 18, 32, 33, and 35. Though Mr. Parry has chosen not to seek qui tam relief, he still must establish the elements of his claim, including that he engaged in protected conduct under the Qui Tam Act. This alone justifies the discovery at issue. Moreover, *Defendants underscore the centrality of their false claims by explaining that they fired Parry because he was raising concerns about false claims incorrectly*. As Defendants submitted, HOM terminated Parry's employment because he was "adamant" about properly disclosing false claims and "t[ook] issue with" the fact that HOM fired the nationally respected firm (Foley & Lardner) it had hired as

1

investigators to avoid doing so. Defs' Response Brief, ECF No. 25, PageID.285. They assert that "the working relationship between Parry and HOM disintegrated" over his incorrect concerns. *Id.* at PageID.285. In summary, Defendants admit they fired Parry because he raised concerns about HOM violating the Anti-Kickback Statute (hereinafter, "AKS"), 42 U.S.C. § 1320a-7b; they just assert he was misguided in doing so.

In cases like this one, a court must ultimately determine whether the whistleblower raised concerns about "conduct [that] reasonably could lead to a viable FCA action," (regardless whether or not it did), see *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 867 (4th Cir. 1999), or whether the whistleblower "fabricate[d] a tale of fraud to extract concessions from the employer . . . ," see *Neal v. Honeywell Inc.,* 33 F.3d 860, 864 (7th Cir. 1994), *abrogated on other grounds by Graham Cnty. Soil & Water Conservation Dist. v. U.S. ex rel. Wilson*, 545 U.S. 409, 416–17 (2005). Therefore, a central question relevant to liability is: **was Parry legitimately attempting to "stop 1 or more [AKS] violations,"** see 31 U.S.C. § 3730(h)(1).

This question can only be answered through discovery on the validity of Parry's concerns about false claims. In the absence of this discovery, there is no way for Plaintiff to prove his case, as there will be no way to disprove Defendants' claim that they fired him because he *invalidly* complained about false claims. Such a conclusion

would set concerning precedent: defendants in whistleblower retaliation cases would need only allege–and without any support–that they terminated the whistleblower because he or she was simply wrong, in order to foreclose discovery that could prove the contrary. To put it another way, HOM cannot both refuse discovery and take a position that there was nothing to discover, all was well, and Parry was barking up a non-tree. Plaintiff's narrowly tailored Requests are relevant to the claims raised.

**2.     Request for Production No. 4 is not overbroad.**

Perhaps no argument better shows the hollowness of Defendants' position than its claim that Request for Production No. 4 is overbroad.[1] There are a number of problems with this argument. First, contrary to what Defendants maintain, responsive production would not be "a massive undertaking[,]" as RFP 4 targets documents about Parry *after he was separated from HOM*. Hence, this is not *every* email he exchanged about workday events. It is not even clear if there would be more than a handful of responsive items not subject to attorney-client privilege; it is unusual for an employer to maintain an extensive dialogue about a terminated employee.

Second, though Defendants claim RFP 4 "would only yield . . . completely irrelevant documents and communication," see Defendants' Response Brief, ECF No. 25, PageID.292, that is not the case, as seen from the face of the Request. Discovery

---

[1] RFP 4 demands "all documents and communications in whole or in part regarding Plaintiff, whether he is named explicitly or not, between June 20, 2021 and present."

3

*as of* and *after* the time of a tort is common, such as to learn how witnesses may process and characterize the events that have occurred, to identify mitigation, and to corroborate motivations. There is no reason why an email to staff, for example, explaining the reason for a Plaintiff's termination might not be discoverable and admissible important evidence. Plaintiff anticipates that RFP 4, which is aimed at uncovering post-termination discussions about reasons for terminating Parry, will, in fact, uncover such evidence.

Finally, this request does not contain "any and all" language seeking undefined items. This request is narrowed to specific documents about one person from a very narrow set of dates; it is very different from, to quote the case Defendants use in support of their position, "asking for everything under the sky." This Court has frequently found that requests asking for "all" documents related to a targeted topic are fair game. *See, e.g.*, *Nall v. Grand Trunk Western R. Co.*, No. 11-cv-15639, 2013 WL 1415226, at *2 (E.D. Mich. Apr. 8, 2013); *North Atlantic Operating Company, Inc. v. JingJing Huang*, 194 F.Supp.3d 634, 639-40 (E.D. Mich. 2016); *Fisher v Caruso*, No. 03-cv-71804, 2005 WL 8167564, at *2 (E.D. Mich. Nov. 16, 2005).

3. **This motion, and action from the Court, is proper, as Defendants have refused to stipulate to a production date.**

Though Defendants claim a motion to compel is improper where a party has agreed to produce requested documents, this is true only where that promise is real and concrete. This Court and others consistently find that vague promises to produce are

4

no defense against a motion to compel, if agreed-upon deadlines are missed and the moving party has repeatedly followed-up on production. *See, e.g.*, *Armstrong v. Shirvell*, No. 11-11921, 2011 WL 13220627, at *1–2 (E.D. Mich. June 29, 2011) (enforcing a motion to compel, where defendant agreed on May 25, 2011 to produce documents by June 30, 2011, but did not); *Hardy v. Iron St. Properties*, No. CV 16-10639, 2017 WL 1021068, at *2 (E.D. Mich. Mar. 16, 2017) (compelling production, where defendant agreed to produce responses to interrogatories, but did not within the agreed-upon timeline, despite reminders); *Martinez v. Blue Star Farms, Inc.*, 325 F.R.D. 212, 216, 220 (W.D. Mich. 2018) (compelling production where defendants "[had] asserted no meaningful objection to production and, to the contrary, [had] promised production of this material—repeatedly," but did not, despite plaintiffs' reminders).

Were things otherwise, the vague assurance that discovery will come—some day—would suffice to answer in all cases, and parties would be empowered by making such a statement to delay indefinitely. That is just not the law. *Cf.* Fed. R. Civ. P. 34(b)(2)(B) ("[P]roduction must be completed either by the time for inspection specified in the request or by another reasonable time specifically identified in the response. When it is necessary to make the production in stages the response should specify the beginning and end dates of the production.").

As fully described in Plaintiff's first brief, see ECF No. 23, PageID.193-200, Defendants have blown past every established deadline and refused to set an end date for their supposed "rolling production," notwithstanding Plaintiff's continuous and polite follow-ups. Plaintiff, in fact, has attempted to chase down discovery for *almost half a year*. After Defendants produced basically only the Plaintiff's personnel file in response to Plaintiff's November 2022 requests, Plaintiff granted extension after extension. Plaintiff sought multiple conferences, and those requests were just ignored. Defendants finally deigned to meet and confer only once. Defendants have not "tr[ied] to provide updates and schedule meetings," but have rather ***reneged on a February 2022 promise to provide a timeline "within a day or two" and ignored Plaintiff's repeated requests throughout March for a stipulation to a timeline***.

This is a stalling act. Defendants present one face to this Court and another to Plaintiff. Defendants claim they are working through heaps of documents, yet, ***in half a year, they have essentially produced Plaintiff's personnel file, which likely took less than a day to procure and review***. And, most recently, after Defendants filed their response, Plaintiff proposed and sent to opposing counsel a stipulation to produce the items they claim they have agreed to produce. **Exh. A**, Lank Email of 4/18/23; **Exh. B**, Smith-Morris Email of 4/19/23. Despite multiple follow-ups, ***Defendants have not agreed to the stipulation.***

Therefore, this Motion to Compel is properly before this Court.

**4.      This Court should award sanctions.**

In discovery disputes, "award of costs is the norm, rather than the exception." *O'dell v. Hope Network W. Michigan/Michigan Educ. Corps,* No. 20-CV-11192, 2022 WL 2194660, at *8 (E.D. Mich. June 17, 2022). In fact, when a party is forced to compel, the *presumption* is that the Court awards fees to the winning party; the losing party has the burden of persuasion that an award of costs is not justified. *See O'dell,* 2022 WL 2194660, at *8. As Defendants have not shown their failure to comply with their discovery obligations is justified, this Court must award sanctions.

## CONCLUSION

For the foregoing reasons, Plaintiff requests that the Court grant his Motion to Compel Defendants to respond to his Interrogatories Nos. 1-2 and to his Requests to Produce Nos. 3-29 and 31-36, and to award sanctions for fees incurred in bringing this motion.

| | |
|---|---|
| Respectfully submitted, | Dated April 21, 2023 |
| SALVATORE PRESCOTT PORTER & PORTER, PLLC | MOGILL, POSNER & COHEN |
| /s/ Sarah Prescott<br>Sarah Prescott (P70510)<br>Annemarie Smith-Morris (IL 6336786)<br>105 E. Main Street<br>Northville, MI 48167<br>(248) 679-8711<br>prescott@spplaw.com<br>smith-morris@spplaw.com | Kenneth M. Mogill (P17865)<br>27 E. Flint St., 2nd Floor<br>Lake Orion, MI 48362<br>(248) 814-9470<br>kmogill@bignet.net |

## **CERTIFICATE OF SERVICE**

I hereby certify that on April 21, 2023, I electronically filed the foregoing document with the Clerk of the Court using this Court's electronic filing system, which will send notification of such filing to all counsel of record.

Dated: April 21, 2023                     /s/ Tara L. Lank
                                                            Tara L. Lank, Legal Secretary