# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

GREGORY PARRY,

    Plaintiff,

v.

HOSPICE OF MICHIGAN, INC., a Michigan non-profit corporation, ROBERT CAHILL, PATRICK MILLER, and LEE ANN MYERS,

    Defendants.

Case No. 2:22-CV-11328

HON. DENISE PAGE HOOD
MAG. DAVID R. GRAND

---

Sarah S. Prescott (P70510)
AnneMarie Smith-Morris (P87221)
SALVATORE PRESCOTT PORTER
  & PORTER, PLLC
105 East Main Street
Northville, MI 48167
(248) 679-8711
prescott@spplaw.com
smith-morris@spplaw.com
*Attorneys for Plaintiff*
Kenneth M. Mogill (P17865)
MOGILL, POSNER & COHEN
27 E. Flint St., 2nd Floor
Lake Orion, MI 48362
(248) 814-9470
kmogill@bignet.net
*Attorneys for Plaintiff*

David R. Deromedi (P42093)
Angelina R. Delmastro (P81712)
DICKINSON WRIGHT PLLC
500 Woodward Ave., Suite 4000
Detroit, MI 48226
(313) 223-3500
dderomedi@dickinsonwright.com
adelmastro@dickinsonwright.com
*Attorneys for Defendants*

---

## DEFENDANTS' CORRECTED RESPONSE AND BRIEF IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION TO ENFORCE SETTLEMENT AGREEMENT

Defendants Hospice of Michigan, Inc., Robert Cahill, Patrick Miller, and Lee Ann Myers (collectively, "Defendants"), by and through their attorneys Dickinson Wright PLLC, hereby respond in opposition to Plaintiff's Emergency Motion to Enforce Settlement Agreement ("Plaintiff's Motion") as follows:

## ISSUES PRESENTED

1. Should the Court grant Plaintiff's Motion where the Parties do not dispute the material terms of the settlement as placed on the record at the settlement conference and have been diligently working towards mutually agreeable wording of same, and, thus, granting Plaintiff's Motion would get the Parties no closer to a formal written agreement?

**Defendants Answer:** No.

**Plaintiff Answers:** Yes.

**The Court Should Answer:** No.

2. Should the Court order Defendants to reimburse Plaintiff for potential negative tax consequences associated with a 2025 settlement payment where, despite both Parties' efforts, the Parties simply were unable to finalize all terms and execute a mutually agreeable written agreement before the end of 2024?

**Defendants Answer:** No.

**Plaintiff Answers:** Yes.

**The Court Should Answer:** No.

3. Should the Court grant Plaintiff's request for attorney's fees and costs where counsel for Defendants has only reasonably and judiciously advocated for the best interests of his clients?

**Defendants Answer:** No.

**Plaintiff Answers:** Yes.

**The Court Should Answer:** No.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Kloian v. Domino's Pizza LLC*, 273 Mich. App. 449, 452 (2006)

28 U.S.C. § 1927

# CORRECTED BRIEF IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION TO ENFORCE SETTLEMENT AGREEMENT

## I. INTRODUCTION

Plaintiff requests that the Court enforce the settlement agreement entered into between the Parties at the November 21, 2024 settlement conference when there is no need to "enforce" anything. Effectuating the material settlement terms agreed to on the record is exactly what the Parties have been trying to do, and were close to achieving, when Plaintiff filed the instant Motion.

At the settlement conference, the parties agreed to the following settlement terms on the record:

- Although the fact that the case settled is going to be public, the terms of that settlement are going to be confidential;
- The settlement payment would be payable according to a split on W2 and 1099s;
- Payment of one-half of Plaintiff's settlement payment within 30 days;
- Payment of the other one-half on or about January 15, 2025;
- Plaintiff's personnel file would be cleared of negative feedback;
- The parties will execute a mutual general release;
- The parties will execute mutual non-disparagement language;
- Mutual exchange of Plaintiff's and HOM's property.

(ECF No. 69, PageIDs.2139–2140.)

1

On December 20, 2024, Defendants sent Plaintiff a draft Confidential Settlement Agreement and General Release of Claims (the "12/20 Agreement"), which reflected in major part the material terms of the Parties' agreement on the record.[1]  Plaintiff refused to execute the 12/20 Agreement, characterizing it as a "novation."  The Parties began exchanging emails and redlines regarding proposed terms.  With this method of communication proving cumbersome and taking more time, after December 24 and as December 31 drew closer Plaintiff's counsel declined the undersigned counsel's offers to discuss by phone.  (*See, e.g.*, **Ex. 1**, 12.23.24 Email from D. Deromedi to S. Prescott, K. Mogill, & A. Smith-Morris; **Ex. 2**, 12.27.24 Email from D. Deromedi to K. Mogill, S. Prescott, A. Smith-Morris, A. Delmastro, & A. Lawson; **Ex. 3**, 12.30.24 Email from D. Deromedi to S. Prescott & K. Mogill.)[2]

Still, it appeared to Defendants that the Parties were getting close to a mutually agreeable final version of a written agreement when, once it became clear that the Parties would not be able to execute a final written agreement before the end of the

---

[1] As Defendants explain in detail *infra* at Section II.D., the 12/20 Agreement erroneously did not include a *mutual* release of claims and did not address exchanging HOM's and Plaintiff's property.  This was a drafting oversight on defense counsel's part – nothing more, nothing less.  Defendants were not intending to change the terms of the Parties' agreement.

[2] The emails provided as Exhibits hereto consist solely of Defendants' counsel's communication to Plaintiff's counsel on the referenced days.  The emails are not submitted for any purpose prohibited by FRE 408, either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction.  The emails are submitted to confirm the timing of the communications between counsel, the offers to discuss terms, and the non-monetary terms referenced therein from Defendants' requests and perspective.

2

year, Plaintiff's counsel declared the Parties to be at an impasse. Plaintiff filed his Motion shortly thereafter.

Based on their review of Plaintiff's 'best and final' version of the settlement agreement, which he sent across the table on December 29, 2024, it is Defendants' understanding that there are only three narrow issues standing between the Parties and a finalized version of a settlement agreement. Defendants request that the Court refer this Motion, and the matters raised herein, to Magistrate Judge Grand for review.

## II. ARGUMENT

### A. Legal Standard

"An agreement to settle a pending lawsuit is a contract and is to be governed by the legal principles applicable to the construction and interpretation of contracts." *Kloian v. Domino's Pizza LLC*, 273 Mich. App. 449, 452; 733 N.W.2d 766 (2006) (quoting *Walbridge Aldinger Co. v. Walcon Corp.*, 207 Mich. App. 566, 571; 525 N.W.2d 489 (1994)). "Before a contract can be completed, there must be an offer and acceptance. 'Unless an acceptance is unambiguous and in strict conformance with the offer, no contract is formed.'" *DaimlerChrysler Corp. v. Wesco Distribution, Inc.*, 281 Mich. App. 240, 245-246; 760 N.W.2d 828 (2008) (quoting *Kloian*, 273 Mich. App. at 452). Additionally, "a contract requires meeting of the minds on all essential terms." *Kloian*, 273 Mich. App. at 473 (citing *Burkhardt v.*

3

*Bailey*, 260 Mich. App. 636, 655; 680 N.W.2d 453 (2004)). "The essential terms of a settlement agreement include the parties to be bound, the amount agreed upon, and some form of consideration." *Allstate Ins. Co. v. Broe*, No. 290133, 2010 WL 2867962, at *3 (Mich. Ct. App. July 22, 2010) (citing *Kloian*, 273 Mich. App. at 454). "Courts judge whether there was a meeting of the minds from objective evidence: from 'the expressed words of the parties and their visible acts.'" *Huntington Nat'l Bank v. Daniel J Aronoff Living Trust*, 305 Mich. App. 496, 508; 853 N.W.2d 481 (2014) (quoting *Goldman v. Century Ins. Co.*, 354 Mich. 528, 535; 93 N.W.2d 240 (1958)). As the proponent of the alleged settlement agreement, Plaintiff bears the burden to prove its existence. *Huntington Nat'l Bank*, 305 Mich. App. at 508.

### B. The Court Should Deny Plaintiff's Request to "Enforce" the Settlement Agreement.

Defendants do not dispute the oral terms agreed to on the record at the settlement conference. Defendants are not seeking to avoid those terms. Indeed, both Parties have been attempting to memorialize in a written settlement agreement the material terms agreed to orally on the record, and after sending the initial draft settlement agreement Defendants have sought finalize the terms through what is typically a process subject to discussion. The draft that the Parties have been exchanging and redlining back and forth is intended to – and does – reflect those material oral terms.

However, the Devil is often in addressing certain details of any written settlement agreement after the parties reach general terms and place those on the record. There are dozens, if not hundreds, of different ways the same oral terms could be reduced to writing. Counsel for both Parties have been zealously advocating for their respective clients' interests, and rightfully so. Thus, the Parties have unsurprisingly experienced difficulty agreeing on specific wording for certain material non-monetary related terms. The Parties also struggled to reach agreement regarding ancillary, nonmaterial non-monetary related terms. Hence, there is not yet an executed final written settlement agreement.

Importantly, the draft Agreement Plaintiff circulated on December 29, 2024 is agreeable to Defendants except for three outstanding issues which were noted for Plaintiff's counsel. (*See* Ex. 3, 12.30.24 Email.) First, in order for Plaintiff's release to be a full and effective release for purposes of this litigation, it must include the following language:

> Further, Plaintiff, his/her agents, advisors, counsels, servants, successors and assigns, (solely in their capacities as agents, advisors, counsel, servants, successors or assigns to Plaintiff) personally, unconditionally, irrevocably and absolutely agree to release and discharge the Released Parties from all actual or potential claims/liabilities/litigation of any kind, from the beginning of time ***to the end of time***, pertaining to any retaliatory actions or claims for attorney's fees under the FCA, including but not limited to Section 3730(h) (Anti-Retaliation) and Section 3730(d) (Awards to Qui Tam Plaintiff) of the FCA, and any analogous state laws.

Plaintiff objects to the phrase "to the end of time" and seeks to limit the release language quoted above to "from the beginning of time to the date of execution of this Agreement." That limitation is not acceptable to Defendants with respect to retaliatory actions that Plaintiff could assert under the FCA given that Plaintiff's complaint alleges that Defendants engaged in retaliation against him under the FCA.

Significantly, and as Defendants have pointed out to Plaintiff, the phrase "to the end of time" does not apply to the entire release paragraph and, moreover, is not intended to act as a waiver of future attorney fees if Plaintiff's counsels file other FCA actions. (*See* Ex. 3, 12.30.24 Email.) Rather, the "to the end of time" release relates solely to Plaintiff's (or his successors, personal representatives) release of any claim pertaining to retaliatory actions under the FCA. (*See id.*) To address Plaintiff's concerns, Defendants proposed adding a proviso along the lines of 'provided, however, that this does not act as a waiver by Plaintiff's counsel to seek attorney fees.' Alternatively, Defendants offered to remove the reference to "counsels" in that sentence entirely. (*See id.*) Plaintiff did not accept either of these options and the "to the end of time" language remains in dispute.

The second issue in dispute pertains to the non-disclosure and confidentiality paragraph. Defendants initially presented Plaintiff with defense counsel's standard non-disclosure language for settlement agreements and addressing the confidentiality of facts that arose related to the litigation or entering into the

Agreement – especially given that such "facts" are disputed – except for those that are in the public record filed in this matter (*see* Ex. 2, 12.27.24 Email; Ex. 3, 12.30.24 Email), which Plaintiff aggressively redlined. The version of the non-disclosure and confidentiality paragraph in Plaintiff's December 29 draft is not acceptable to Defendants. Defendants are willing to accept some of Plaintiff's changes, but not all. (*See* Ex. 3, 12.30.24 Email.) Defendants are willing to agree to the following language, which is a reasonable middle ground between Defendants' initial proposal and Plaintiff's December 29 wholesale revision:

> **Non-Disclosure and Confidentiality**. Plaintiff and Defendants acknowledge that it is in their mutual interest to settle this dispute and Defendants would not settle this dispute if they were unable to avoid both: (a) a public disclosure of the terms and conditions of this settlement, including the consideration paid to Plaintiff, and (b) further use or disclosure, other than what is contained in the public record filings in the Litigation, of any of the facts, circumstances, documents, or information used in, about, or related to the Litigation (including, without limitation, discovery information exchanged. Defendants agree that they shall not disclose, or cause to be disclosed, facts related to the Litigation or the terms of this Agreement, except to those persons within HOM, or HOM legal counsel, who have business need to know of the Agreement and its terms. Plaintiff agrees and represents that neither he nor his agents or advisors or counselors will use, post, disclose, or cause or permit to be disclosed, any of the facts, circumstances, documents, or information about or related to the Litigation, including but not limited to what produced or obtained through discovery, and any facts, circumstance, or other information regarding the settlement of the Litigation, other than what is in the public record filings in the Litigation, or the terms this

7

> Agreement to any other person, except (1) to the extent necessary to report income to appropriate taxing authorities or to seek financial or tax advice; (2) in response to an order or subpoena of a court of competent jurisdiction; or (3) in response to any subpoena issued by a state or federal governmental agency. However, if terms of this Agreement are disclosed through no fault of the Plaintiff, the above provision shall thenceforth be null. In the event of a breach of the confidentiality obligations set forth in this Agreement, the non-breaching party shall be entitled to seek all available legal and equitable remedies, including but not limited to injunctive relief, specific performance, and monetary damages. The breaching party acknowledges that a breach of confidentiality may cause irreparable harm to the non-breaching party, and that monetary damages alone may be insufficient to compensate for such harm. Additionally, without limiting the foregoing, if this non-use/disclosure and confidentiality provision is violated it shall be punishable by contempt of court with a sanction to be determined by the court in an amount sufficient to punish the violation and deter future violations.

The third and final issue involves a representation and warranty by Plaintiff that is necessary to an effective release of Plaintiff's claims given that the claims involve alleged violations by Defendants of the FCA and Anti-Kickback Statute. Plaintiff did not agree to include the following representation and warranty:

> Plaintiff will not initiate or make (except as required by law), any report to any federal, state or government agency against the Released Parties regarding the facts, circumstances, information and subject-matter related to the Litigation, including alleged non-compliance with the Federal False Claims Act, the Medicaid False Claims Act, the Anti-Kickback Act of 1986, or any other similar federal or state statute.

8

However, this representation and warranty – already pared down to its bones – is crucial to the meaning and substance of a material term of the settlement. It is at the crux of the Parties' agreement; it goes to the very core of what Plaintiff is giving up in consideration for the settlement payment. Indeed, Plaintiff cannot actually release his claims against the Released Parties without making this representation and warranty. The quoted language above already represents a concession on Defendants' part with respect to representations and warranties by Plaintiff. Defendants do not understand Plaintiff's refusal to make this representation and warranty and are unwilling to compromise any further on this point.

Nevertheless, there is no need to "enforce" the oral settlement agreement the Parties reached on the record. There is no dispute regarding the oral terms that the parties agreed to. As the Court and the Parties have already seen, the Devil related to non-monetary terms in a settlement agreement is in the details. Plaintiff did not submit a written agreement in support of his Motion. If the Court were to grant the relief requested in Plaintiff's Motion, the Parties would be right back where they started. Unless the Court itself fashions a written settlement agreement for the Parties, the Parties would simply be facing – again – the task of putting pen to paper and reducing oral terms into writing. For these reasons, the Court should deny Plaintiff's Motion and leave the Parties to iron out the disputed details.

### C. Defendants are Not Liable for Plaintiff's Tax Consequences.

It is undisputed that the Parties' intended that Plaintiff would receive part of the settlement payment in December 2024 and part of the settlement payment in January 2025. (*See* Ex. 2, 12.27.24 Email *"As I have said before, HOM has Greg's payment ready to go for wire transfer. There is no intent to try and delay his 2024 payment into 2025."*) Defendants' counsel repeatedly requested wire transfer information for Plaintiff. It is also undisputed that did not happen. It is not, however, Defendants' fault.

Defendants endeavored in good faith to timely finalize and execute a written settlement agreement. (*See* Ex. 2, 12.27.24 Email *"If we can get an agreement signed by Monday 2 pm his payment can go that afternoon. I would need to have his bank information for the wire."*) Admittedly, Defendants were unable to provide Plaintiff with an initial draft as early as Defendants would have liked, but the Parties still would have had plenty of time to finalize, execute, and pay on an agreement were it not for the wordsmithing issues the Parties encountered. Indeed, both Parties worked diligently towards a written agreement in the final days of 2024, including spending significant attention on it leading into and out of the Christmas holiday; the written agreement has simply taken more time than either Party would like.

Because it is not **<u>Defendants'</u>** fault that the Parties were ultimately unable to reach a final agreement before the end of the year, Defendants are not liable for any

10

negative tax consequences Plaintiff may encounter by virtue of receiving his entire settlement payment in calendar year 2025. Therefore, the Court should deny Plaintiff's request that Defendants reimburse him for any tax consequences associated with the entire settlement payment occurring in 2025.

### D. Plaintiff is Not Entitled to Attorney's Fees and Costs.

The Court should deny Plaintiff's request for attorney's fees and costs under 28 U.S.C. § 1927. 28 U.S.C. § 1927 provides that, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees incurred because of such conduct." *Id.* The purpose of § 1927 is to "deter dilatory litigation practices and to punish aggressive tactics *that far exceed zealous advocacy*." *Red Carpet Studios Div. of Source Adv. Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006)(emphasis added). Attorney's fees are warranted under § 1927 "when an attorney engages in conduct that 'falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.'" *Magnesium Mach., LLC v. Terves, LLC*, Nos. 20-3779/3998, 2021 WL 5772533, at *6 (6th Cir. Dec. 6, 2021) (quoting *Holmes v. City of Massillon*, 78 F.3d 1041, 1049 (6th Cir. 1996)). This is a very high bar – reserved only for objectively unreasonable conduct. *Red Carpet Studios,* 465 F.3d at 646. To that end, sanctions under § 1927 are warranted **_only_** where an attorney "abuses the

11

judicial process or knowingly disregards the risk that he will needlessly multiply proceedings." *Carter v. Hickory Healthcare Inc.*, 905 F.3d 963, 968–969 (6th Cir. 2018).

Nothing could be further from the case here. Defendants' counsel strove to timely provide an initial draft agreement. When internal reviews were taking longer than anticipated (through no fault of the undersigned), Defendants' counsel communicated with Plaintiff's counsel on December 12, explained the delay, and provided a tentative draft pending final client signoff. Defendants provided an updated, final first draft on December 20. (*See* Ex. 2, 12.27.24 Email *"I acknowledge that it took longer than I expected to get the draft to everyone, and I am doing everything to get this closed out."*)

With the exception of the release of claims being mutual, the initial draft agreement Defendants sent to Plaintiff accurately reflected the material terms agreed to on the record. The lack of mutuality in the release of claims was a complete oversight by counsel. The omission of mutuality in the initial draft agreement was not intentional. The settlement conference took a full day, and the parties' agreed-upon terms were only placed on the record orally. At the time of preparing the initial draft, Defendants' counsel did not have the benefit of a transcript of the terms placed orally on the record, and drafted in good faith based on his recollection of the parties'

12

terms and his notes from the settlement conference. The oversight was swiftly corrected in the next turn of the draft agreement.

Defendants' counsel has done nothing to multiply proceedings. On the contrary, Defendants' counsel repeatedly offered to speak with Plaintiff's counsel by phone in hopes of streamlining (and speeding up) the redlining process. (*See* Ex. 1, 12.23.24 Email; Ex. 2, 12.27.24 Email.) When Plaintiff's counsel declined to speak by phone, Defendants' counsel attempted to clarify and narrow the outstanding issues in dispute by email. (*See* Ex. 3, 12.30.24 Email.)

Defendants' counsel has no doubt zealously advocated for his clients' best interests, but he has done so reasonably. While Defendants have stood firm on key issues central to the material non-monetary terms of the Parties' agreement, Defendants have also made numerous concessions. They accepted many language changes requested by Plaintiff. In several other instances, they offered alternative language in compromise, which in some cases Plaintiff accepted and in other cases Plaintiff rejected. Plaintiff's counsel, too, has zealously advocated for their client's best interests.

There has been no malfeasance or dilatory tactics here by either side. This is a complicated case, resulting in a complicated settlement. Neither Party is attempting to avoid the material terms agreed to orally on the record. The Parties are simply engaging in an attempt to agree on one of the plethora of ways those oral

13

non-monetary terms could be reduced to writing and the details describing the terms. Sanctions under § 1927 are inappropriate and the Court should deny Plaintiff's Motion.

### III.  CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants respectfully request that this Honorable Court deny Plaintiff's Emergency Motion to Enforce Settlement Agreement in its entirety and award such other relief as it deems just and proper.

Date: January 14, 2025	Respectfully submitted,

DICKINSON WRIGHT PLLC

By: */s/ David R. Deromedi*
David R. Deromedi (P42093)
Angelina R. Delmastro (P81712)
500 Woodward Ave., Suite 4000
Detroit, MI  48226
(313) 223-3500
dderomedi@dickinsonwright.com
adelmastro@dickinsonwright.com
*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I certify that on January 14, 2025, I electronically filed the foregoing *Defendants' Corrected Response and Brief in Opposition to Plaintiff's Emergency Motion to Enforce Settlement Agreement* with the Clerk of the Court using the ECF system, which will send notification of such filing to all parties of record.

                                              ***/s/ Colleen L. Maguire***

                                              Legal Secretary
                                              DICKINSON WRIGHT, PLLC
                                              500 Woodward Avenue, Suite 4000
                                              Detroit, Michigan  48226-3425
                                              (313) 223-3500
                                              cmaguire@dickinsonwright.com