# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

GREGORY PARRY,

        Plaintiff,

v.

HOSPICE OF MICHIGAN, INC., *a Michigan non-profit corporation*, et al.

        Defendants.

Case No. 2:22-cv-11328-DPH-DRG
Mag. David R. Grand
Hon. Denise Page Hood

---

Sarah S. Prescott (P70510)
Annemarie Smith-Morris (P87221)
SALVATORE PRESCOTT PORTER & PORTER, PLLC
*Attorneys for Plaintiff*
105 East Main Street
Northville, MI 48167
(248) 679-8711
prescott@spplaw.com
smith-morris@spplaw.com

Kenneth M. Mogill (P17865)
MOGILL & LEMANSKI, PLLC
*Attorneys for Plaintiff*
27 E. Flint St., 2nd Floor
Lake Orion, MI 48362
(248) 814-9470
kmogill@bignet.net

David R. Deromedi (P42093)
Angelina Rose Delmastro (P81712)
DICKINSON WRIGHT PLLC
*Attorneys for Defendant*
500 Woodward Ave., Suite 4000
Detroit, MI 48226
(313) 223-3048
dderomedi@dickinsonwright.com
adelmastro@dickinsonwright.com

---

**PLAINTIFF'S REPLY AND BRIEF TO DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION TO ENFORCE SETTLEMENT AGREEMENT [CORRECTED]**

Defendants settled this case with their able counsel at Dickinson Wright in November 2024. Since then, Defendants and their counsel of record have farmed out decisions on settlement to Health Law Partners, who are not counsel of record, were not at the settlement conference, and do not communicate with Plaintiff's team–and those folks want concessions added to the settlement reached in Court. Exh. A. Sure, they cannot and do not dispute what was agreed on the record, but they do want additional concessions. Plaintiff has offered to make several concessions just to get this case done (e.g., agreeing never to reapply to HOM), but cannot and will not agree to others. And, the proof is in the pudding: one side in this dispute is fine with what was agreed on the record; the other is not. Defendants are resisting.

This Court should enter an Order enforcing the settlement as placed on the record, so that Plaintiff can begin collection, and sanction the defense team for vexatiousness. Plaintiff has been materially harmed in the **tens of thousands of dollars by the breach** (failure to pay him, as agreed on, during the 2024 tax year). Defendants knew time was of the essence in paying him. *See* Exhs. I, J (noting that time is of the essence and would cost Parry tens of thousands of dollars in bargained-for tax savings). Parry is entitled to be made whole. If the Court will not enter an appropriate Order, he wants his trial forthwith.

Three legal points control here:

2

(1) Defendants "do not dispute" that they agreed to settle. Opp. at Pg ID 2196.

(2) They admit: "**<u>There is no dispute regarding the oral terms that the parties agreed to</u>**." Opp. at Pg. ID. 2176 (emphasis added).

(3) All material terms of an enforceable settlement were established. As Defendants' own citations state, "The essential terms of a settlement agreement include the **parties** to be bound, the **amount** agreed upon, and some form of **consideration**." *Allstate Ins. Co. v. Broe*, No. 290133, 2010 WL 2867962, at *3 (Mich. Ct. App. July 22, 2010) (citing *Kloian v. Domino's Pizza, LLC*, 733 N.W.2d 766, 771 (Mich. Ct. App. 2006)).

Adding new lawyers who think Dickinson Wright did not drive a hard enough bargain at the time of settlement is not a defense to enforcement. And there is no *other, better* defense here. "A district court 'has the inherent authority and equitable power to enforce agreements in settlement of litigation before it, even if that agreement has not been reduced to writing.'" *Moore v. United States Postal Serv.*, 369 F. App'x 712, 717 (6th Cir. 2010).

## I. Defendants Improperly Try to Involve this Court in Re-Opening the Settlement

Defendants' opposition brief is a chimera. Out of one side of their mouths, Defendants claim the parties are at odds over mere "details," the "specific

3

wording" that could be written in any old way, "ancillary, nonmaterial" issues. Opp'n Brief at Pg. ID 2197. Out of the other side of their mouths, they claim what is in dispute is "necessary" and "crucial to the meaning and substance of a material term of the settlement." *Id.* at Pg. ID. 2201. The first characterization is an effort to coax the Court into pressing for a new agreement; the second shows why the Court must not.

What is "essential" to a settlement contract and to enforcement is a matter of law, cited in (3) above–from Defendants' *own* brief. Certainly all the cited, necessary items were established (and much more) on the record here, i.e., the parties to be bound, the amount of settlement,[1] and the consideration to Defendants, including Plaintiff foregoing trial and his opportunity to obtain more proceeds. "Where agreement has been expressed on all the essential terms of the contract, the mere fact that the parties manifest an intention to prepare a written memorial of their agreement does not render the oral contract unenforceable merely because the writing is never prepared." *Remark LLC v. Adell Broad.*, 817 F. Supp. 2d 990, 1005 (E.D. Mich. 2011).

Judge Steeh recently had a matter exactly like this and granted the motion to enforce, citing this law. *Strategic Staffing Sols., L.C. v. Urb. Armz, LLC*, No. 22-12216, 2023 WL 6449422, at *3 (E.D. Mich. Oct. 3, 2023) (granting motion to

---

[1] The amount of the settlement was not put on the record, but the agreement as to the amount was, and no one disputes that figure. Each draft agreement contains it.

4

enforce, where essential terms were agreed but Defendants sought additional terms), Exh. C.

If this Court were to re-open this matter, it would be no different than the Court voiding the contract these parties verbally entered after extensive negotiation. Certainly, this Court cannot rewrite the deal. A federal court "has no authority to change the terms of a contract…." *Pichey v. Ameritech Interactive Media Servs., Inc.*, 421 F. Supp. 2d 1038, 1044 (W.D. Mich. 2006).

## II. Defendants Demand Concessions that are not Minor Nuances

Section I above establishes that this Court has no role in reviewing what more Defendants want and whether it is "minor enough" to preclude enforcement. But if the Court wishes to assess what remains at issue, then this Section shows how substantial are the concessions Defendants seek.

### A. Waiving Claims Until the End of Time

Plaintiff has always been willing to release **everything** that happened before settlement as consideration for his payment.[2] However, at the time of settlement,

---

[2] Plaintiff proposed on December 22 to release "any and all claims and actions, of every kind, nature and description, whether known or unknown, which Plaintiff may have had, or may now have, including [many things listed here, and] claims for retaliation or recovery of damages under the Federal False Claims Act, the public policy of the State of Michigan, the Medicaid False Claims Act, MCL 401.610c, the Federal Anti-Kickback statute (or state law equivalents)...[and many other things listed here] or any claim under state or federal statutory or common law, in…equity, or on any legal theory whatsoever." Exh. F. This was rejected because it did not also release future claims.

there was no discussion of conditioning resolution on Plaintiff agreeing to waive *future* retaliation actions. Accordingly, the first version of a settlement sent on December 12, 2024 to Plaintiff by Defendants, Exh. D, did not include any waiver of events in the future.[3]

Seven days passed with no update, as the defense continued to edit its own draft. Finally, Dickinson made clear, Exh. A, that it was still awaiting changes to the draft agreement from Health Law Partners, the firm that has never filed an appearance and has never been involved at all in negotiations in this matter. The next day, a draft arrived in which Health Law Partners demanded or Dickinson edited itself to demand (as quoted in the Opposition Brief) that Mr. Parry also waive "all…claims…of any kind…to the end of time, pertaining to any retaliatory actions or claims for attorney's fees under the FCA…and any analogous state laws."[4] Because this would not be limited to past claims, if Mr. Parry signed such a clause and then for the rest of his life Defendants interfered with and lied about him to get him fired from his work in retaliation for bringing this suit,[5] he could not litigate that *future* retaliation. Parry cannot and will not bind himself never to

---

[3] The December 12 draft was limited appropriately to "claims…which Plaintiff may have had, may now have…or [that] may have been brought or could have been initiated by Plaintiff." Exh. D.

[4] This is part of the text Defendants cite in their Opposition Brief, so we do not attach a separate exhibit to substantiate this demand.

[5] Our office has seen plaintiffs followed out of state to successive jobs with this mode of conduct.

6

vindicate certain rights, no matter what the Defendants do to him, "until the end of time."

Future claims of this sort are never waived in a settlement. *See, e.g.,* 29 Williston on Contracts § 73:10 (4th ed.) (a release will "ordinarily release all present, but not future, claims."). It would be malpractice to agree. That is why Defendants' original December 12 proposal did not contain such a thing.

While Defendants' theme in opposing this motion is that Plaintiff's counsel won't engage, the truth is, someone at Health Law Partners is playing Oz behind the curtain, despite **never** having talked with Plaintiff's counsel and never litigating any aspect of this case. The defense team is internally at odds and wants to move the goal posts after settlement.

B. **Trying to Bind Plaintiff's Counsel**

The same basic tension within the defense team is evidenced in the second issue Defendants highlight in the opposition brief. Nothing agreed on the record stated that as a condition of settlement **Plaintiff's counsel** would be bound to **any** condition whatsoever. There was no discussion or agreement of such a thing, and there is no consideration for it.[6] Yet, in December, defense counsel called to ask Plaintiff's counsel to do one "minor" tiny little thing: that is, to agree never to sue HOM again, representing anyone. Plaintiff's counsel clearly, immediately, outright

---

[6] Plaintiff's counsel's fees are the consideration in the contract between Plaintiff and the undersigned. They are owed separately from any deal with Defendants.

7

refused this, but in a show of good faith and to move things along, suggested a limited representation and warranty that no client was lined up to sue HOM–which was true then and remains true now. Despite making that courtesy offer to aid defense counsel to bring his clients along, Defendants were not satisfied. They have pitched the same, completely unacceptable idea several different ways. As their brief shows, they refuse to pay Mr. Parry as agreed, unless his counsel will sign a contract stating that **they** will never "use….any of the facts…or information about or related to the Litigation….[,]" that this limitation is "not limited to what produced or obtained through discovery," and if "violated it shall be punishable by contempt of court…."[7]

The above language would prevent Salvatore Prescott Porter & Porter or Mogill & Lemanski from representing any other potential victims of HOM, because it bars "using" facts. If Parry's successor at HOM faces identical retaliation as Parry suffered (and for the same reason), HOM wants to ensure that that person cannot get help from the very lawyers most likely to take the case and who best understand how HOM operates and what has occurred in the past.

Michigan Rule of Professional Conduct 5.6 states, "A lawyer shall not participate in offering or making….an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private

---

[7] This is part of the text Defendants cite in their Opposition Brief, so we do not attach a separate exhibit to substantiate this demand.

8

parties." The undersigned would never agree to an unethical limitation on parties' rights to the counsel of their choice. But what is controlling is that this add-on condition **was not discussed or agreed on or off the record**.

In fact, this new condition appears to be the work of Health Law Partners. The settlement agreement HOM offered Parry on December 12, 2024, Exh. D, and the one they gave him when they very first fired him, Exh. G, *did not contain this* provision. The defense team altered their own demands between December 12 (Exh. D) and December 20 (Exh. E) to insist on this irregular provision contrary to common practice and common sense, and they initiated this on the very last business day they had to pay Mr. Parry on time.

### C. Trying to Preclude Cooperating with Law Enforcement

The settlement agreement HOM offered Parry when they fired him back in 2023, Exh. G, did not contain any promise not to speak with law enforcement. Nothing on the record and agreed by the parties said that, either. Yet Defendants have refused to pay Parry as agreed, unless Plaintiff promises never to "report to any federal…agency against the Released Parties….facts, circumstances, information…[about] alleged non-compliance with the Federal False Claims Act, the Medicaid False Claims Act, the Anti-Kickback Act of 1986, or any other similar federal or state statute."[8]

---

[8] This is part of the text Defendants cite in their Opposition Brief, so we do not attach a separate exhibit to substantiate this demand.

9

To be very clear, there is no time limit to this. So, if Mr. Parry (a lawyer) received a request for advice from a whistleblower inside HOM in 2031, he could not represent that person before the Government. If he went to work for Medicaid and saw HOM commit criminal fraud before his eyes, he could not report it.

Whatever the timeline, Plaintiff will not agree to never report a crime; such agreements are against public policy. *Roberts v. United States*, 445 U.S. 552, 557 (1980) (citing the "deeply rooted social obligation" to cooperate with law enforcement); *Fomby-Denson v. Dep't of Army*, 247 F.3d 1366, 1377-78 (Fed. Cir. 2001); *Cosby v. Am. Media, Inc.*, 197 F. Supp. 3d 735, 742 (E.D. Pa. 2016) ("[T]o the extent that the [settlement agreement] purports to prevent…voluntarily disclosing information about crimes to law enforcement authorities, it is unenforceable as against public policy.").

Moreover, it is potentially a federal crime to pressure Parry not to cooperate or not to state what he knows. *See* Gillers, Stephen, *Speak No Evil: Settlement Agreements Conditioned on Noncooperation Are Illegal and Unethical*, 13 Hofstra L. Rev. 13, 15 (2002) (citing cases) ("[M]aking or asking for a contractually binding noncooperation pledge [as to alleged crimes] as part of the consideration in a settlement agreement, or assisting a client in doing so, is also a crime[.]"); Jon Bauer, *Buying Witness Silence: Evidence-Suppressing Settlements and Lawyers' Ethics*, 87 Or. L. Rev. 481 (2008). Here, defense counsel cannot even claim they

are doing so to resolve a claim in dispute; the case was settled and on the record, and the money was due before they asked for this.

In short, what Defendants are now seeking, after settlement, is unethical and likely illegal. And before the Court takes the invitation to try to protect anyone from founded criminal prosecution, it may want to review the docket entries in which these same parties averred under oath that they never lost a moment of sleep over any of their behavior, which was uniformly honest and certainly *not* criminal. This was, after all, the defense case theory: they had no concerns about what Parry reported, and no motive to ax him, because nothing they did was illegal. Since the parties testified under oath that they are completely comfortable with their conduct, it is hard to understand why they are holding out for an idiosyncratic, eleventh-hour add-on that they must know would never stand up in a court of law. The word "vexatiousness" fits.[9]

## III.  On Vexatiousness

Vexatiousness here cost Parry tens of thousands of dollars in bargained-for tax treatment of his settlement. On the record, HOM promised to pay him half of his proceeds within 30 days of settlement, i.e., as of December 21, 2024. He must

---

[9] During the briefing of this matter, Mr. Deromedi has informally presented ideas he believes would soften some (not all) of the conditions for payment he has briefed. *Softening* poisoned pills never agreed to on the record is insufficient, however. And, in any event, Mr. Deromedi has consistently reaffirmed that he has **no** client authority to improve on the content discussed herein.

be made whole; merely enforcing part of the benefit of the bargain will not suffice. There has been an outright breach of the binding agreement on the record, and that needs to be remedied. An appropriate vehicle is sanctioning vexatiousness.

Defendants' theme is that they were justified in their breach because Plaintiff's counsel refused to talk over this matter. In fact, what happened is that they breached and then wanted to strong-arm Parry into accepting the poison-pill conditions of lawyers with no appearance on file and no history in the case. The facts follow.

After this matter was settled on the record, Defendants waited weeks before communicating with Plaintiff at all. Plaintiff politely and repeatedly asked for a settlement agreement. Mr. Deromedi assured Plaintiff that the agreement was coming very shortly.

Multiple reminders later, on December 12, nine days before the money was due, Mr. Deromedi advised Plaintiff that he had a working draft still very much in progress, and his own clients did ***not*** approve it. Exh. D. Plaintiff nevertheless reviewed it and engaged immediately, replying substantively two hours later that certain elements of the working document must be omitted in any final deal. For example, Plaintiff identified the proposed terms were –

> 4. [I]llegal or unethical to request or to agree to, i.e., as a constraint of free choice of counsel and as a bar to reporting illegal activity to the government. In any case, we cannot agree to it. As discussed, I could massage the part about this firm does not have a present intent to bring another civil suit and

12

discuss with Ken who I've cc'd.

5. Terms that weren't put on the record aren't really agreeable in general. Exh. H. Mr. Deromedi's draft also did not include the basic consideration owed to Plaintiff, such as any form of release for him or any return of his property.

A full week later, Mr. Deromedi explained with apology that Health Law Partners was holding things up; he still did not have its changes to his own work, or any proposal his clients would accept. Exh. A. It was December 19, two days until the money was due, as HOM had agreed upon in November in Court.

Finally, the next day (the last business day before the money was due to Plaintiff as agreed in Court on the record and the Friday before Christmas), December 20 **at 3:59 p.m.**, Mr. Deromedi sent a draft he said he could stand by. Exh. E.

This draft contained redlines of Mr. Deromedi's own work, altering it to insert the new, entirely unacceptable items discussed above. *Id.* Meanwhile, what it still did **not** contain was the release for Parry and return of his property, two of the items that *were* put on the record as material terms of settlement. *See* Opp'n Brief (Corrected) fn. 1 at Pg. ID 2194. In short, before breaching outright by failing to pay Mr. Parry on time as agreed on the record on November 21, 2024, Defendants **never** offered any agreement that included all of Mr. Parry's consideration.

Within 45 minutes of receiving this new draft on December 20, 2024, the

13

undersigned engaged. She objected in writing, in part, as follows:

> As you know, this agreement contains terms not agreed by the parties on the record. It contains contra-factuals, such as my client attesting that he is not aware of any violations of the FCA. It also states that my client has reported all of the compliance issues of which he is aware. He hasn't, because he has never been asked that. My client is not lying to get a deal done here. The version also *expands* and adds a bunch of stuff, rather than responding to the comments I previously sent you that this was already over-much -- and it does not set forth the proper payment schedule.
>
> Respectfully, your clients settled this case. We put it on the record. They are bound. The settlement called for payment of my client, in part in December, and me in full in December. The remainder is due to him in January. This was material, because it will impact his taxes in the tens of thousands of dollars.

Exh. I. Then, working over the weekend before Christmas, Plaintiff's counsel scrambled to get Plaintiff's approval and was able to supply a corrective redline by December 22, the Sunday before Christmas. Exh. F. Breach had already occurred with nonpayment.

The parties exchanged numerous emails over Monday, December 23. Next, they spoke live on Christmas Eve. Plaintiff's counsel again made clear verbally that any agreement needed to generally align with what was put on the record.

Defendants make much of the notion that they stood ready to pay Plaintiff, and they made very sure to document how eager they were to do just that. But they were supposedly willing to do so only *after* their breach, and contingent on Parry accepting terms like those above that added unethical, likely illegal, and

completely unacceptable poison pills.

On December 26, Defendants sent another draft, but it simply returned what Plaintiff had already rejected. At 11:17 p.m., just hours later, the undersigned responded again despite breach five days before:

> In response to my redline, I now see you've sent me another requested novation, late on December 26, that only returns to provisions that were (a) not mentioned in negotiation at all, (b) are not standard, (c) were not agreed upon and placed on the record at the time of settlement, *and* (d) were rejected clearly by my earlier redline.

Exh. J. The undersigned then provided another narrative of why the Defendants' new conditions were not acceptable and yet another redline to correct the language in the settlement. This included proposed courtesy concessions never discussed during the settlement negotiations, in another good faith effort to re-settle.

The next day, December 27, 2024, Defendants announced that they could not pay the amounts owed in 2024 and would not do so, because "there is no signed agreement" for the insurer and "HOM is not able to pay…out of its cash." Exh. K. With this announcement, Defendants sent yet *another* redline still insisting on the same terms never put on the record, which had been rejected on December 12, 20, 22, and 26. These same terms are the ones Defendants have briefed. Plaintiff's repeated efforts to settle in good faith failed, and Defendants are in breach.

## CONCLUSION AND REMEDY

Plaintiff has lost **tens of thousands of dollars** due to Defendants' breach of

contract and defense counsel's vexatiousness, and Plaintiff's counsel has expended many more thousands in attorney fees that should not have been required. Parry and his counsel together lose $418.00 per day in interest on the unpaid outstanding amount owed. Defendants need to be sanctioned, and Plaintiff must be made whole. Plaintiff requests:

(a) An order incorporating the terms of the settlement placed on the record (with the settlement amount) and retaining jurisdiction to enforce the agreement and granting this motion; a ruling to enforce it.

(b) An order for an evidentiary hearing on the value of the sanctions set for 60 days from present, together with a ruling *now* that sanctions *are* justified. It is Plaintiff's hope that he can negotiate a resolution before that hearing on the breach.

Respectfully submitted,
SALVATORE PRESCOTT
PRESCOTT & PORTER, PLLC

/s/ Sarah S. Prescott
_____

Sarah S. Prescott (P70510)
Annemarie Smith-Morris (P87221)
Attorneys for Plaintiff
105 East Main Street
Northville, MI 48167
(248) 679-8711
prescott@spplaw.com
smith-morris@spplaw.com

16

Dated: January 24, 2025

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

GREGORY PARRY,

        Plaintiff,

v.

HOSPICE OF MICHIGAN, INC., *a Michigan non-profit corporation*, et al.

        Defendants.

Case No. 2:22-cv-11328-DPH-DRG

Hon. Denise Page Hood

---

Sarah S. Prescott (P70510)
Annemarie Smith-Morris (P87221)
SALVATORE PRESCOTT
PORTER & PORTER, PLLC
*Attorneys for Plaintiff*
105 East Main Street
Northville, MI 48167
(248) 679-8711
prescott@sppplaw.com
smith-morris@sppplaw.com

Kenneth M. Mogill (P17865)
MOGILL & LEMANSKI, PLLC
*Attorneys for Plaintiff*
27 E. Flint St., 2nd Floor
Lake Orion, MI 48362
(248) 814-9470
kmogill@bignet.net

David R. Deromedi (P42093)
Angelina Rose Delmastro (P81712)
DICKINSON WRIGHT PLLC
*Attorneys for Defendant*
500 Woodward Ave., Suite 4000
Detroit, MI 48226
(313) 223-3048
dderomedi@dickinsonwright.com
adelmastro@dickinsonwright.com

---

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 24, 2025, I electronically filed the foregoing *Plaintiff's Reply and Brief to Defendants' Response in Opposition to Plaintiff's*

18

*Emergency Motion to Enforce Settlement Agreement [Corrected],* and this *Certificate of Service* with the Clerk of the Court using the Court's ECF system, which will send notification of such filing to all parties of record.


Dated: January 24, 2025               /s/ *Annemarie Smith-Morris*
                                    Annemarie Smith-Morris, attorney